## COLE, Respondent, *v.* HOLLIDAY, Appellant.

### May 22, 1877.

1. In an action for breach of promise of marriage, where the precise time is not agreed upon, the law construes it to be a promise to marry in a reasonable time, upon request, and the plaintiff must allege and prove, not only that defendant did not marry her, but also that she was willing and offered to marry him, and that he refused her, before suit brought.

2. In considering what will fulfil the conditions of a tender by the woman, the law makes allowance for the natural modesty of the sex. Such tender may be made by any one whose authority to do so may be inferred from the relation of the parties.

3. In an action for the breach of a promise of marriage, testimony of the plaintiff's bad character for chastity is legitimate in mitigation of damages..

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

CLINE, JAMISON & DAY, for appellant: What constitutes a breach of promise to marry.— Roscoe's Dig. Ev. 261; *Gough* v. *Farr*, 2 Car. & P. 631. Where there is evidence of a refusal to marry, the question is one for the jury. — *Willard* v. *Stone*, 7 Cow. 22; *Hubbard* v. *Bonesteel*, 17 Barb. 360; 2 Stark. on Ev. 942. Damages, mitigation, and

aggravation.— *Buller* v. *Eschleman*, 18 Ill. 44 ; *Denslow* v. *Vanhorn*, 16 Iowa, 476 ; *White* v. *Thomas*, 12 Ohio St. 312.

R. S. MACDONALD, for respondent : What constitutes a promise to marry.— *Green* v. *Spencer*, 3 Mo. 318 ; *s. c.*, 8 Barb. 323. Where no definite time is fixed upon by the parties to the contract, for the performance thereof, then a reasonable time is meant. — *Coil* v. *Wallace*, 24 N. J. 291. Positive proof of a tender and refusal are not required, but conduct or declarations equivalent to a refusal are sufficient evidence of an intention not to perform the contract. — *Davis* v. *Slagle*, 27 Mo. 602 ; *Seymour* v. *Gartside*, 2 Dow. & Ry. 55 ; *Willard* v. *Stone*, 7 Cow. 22 ; *Martin* v. *Patton*, 1 Litt. 236 ; *Prescott* v. *Guyler*, 32 Ill. 328 ; *Holcraft* v. *Dickson*, 1 Freem. 346. Damages, mitigation, and aggravation. — *Thorn* v. *Knapp*, 42 N. Y. 474 ; *Krippen* v. *McConnell*, 30 N. Y. 285 ; *Buckley* v. *Knapp*, 48 Mo. 159 ; *Reed* v. *Clark*, 47 Cal. 194 ; *Sheehan* v. *Barry*, 27 Mich. 217 ; *Simpson* v. *Black*, 27 Wis. 296 ; 24 N. Y. 252 ; 8 Barb. 323. Excessive damages. — *Woodson* v. *Scott*, 20 Mo. 272 ; *Wells* v. *Sanger*, 21 Mo. 344 ; *Fallenstein* v. *Booth*, 13 Mo. 427 ; Sedgw. on Dam. 466 ; *Smith* v. *Woodfine*, C. B. 660 ; *Gough* v. *Farr*, 1 Y. & J. 477.

BAKEWELL, J., delivered the opinion of the court.

This is an action for breach of promise of marriage, commenced November 9, 1874. The petition alleges that plaintiff, on or about July 5, 1873, promised to marry defendant, and that defendant then promised to marry plaintiff ; that, relying on defendant's promise, plaintiff had sexual intercourse with defendant, in consequence of which she was delivered of a child, now dead ; that, though a reasonable time has elapsed, defendant, though often requested to do so, has refused and still refuses to marry plaintiff, to her damage $30,000.

Defendant, in his answer, denies all these allegations, and

says that plaintiff never offered to marry him at any time, and that he has " no knowledge or notice of any kind whatever of any desire, claim, purpose, or intent on the part of plaintiff to marry " him.

There was a verdict and judgment for plaintiff for $7,000. A *remittitur* was then entered of $3,000 ; and, a motion for a new trial being overruled, defendant brings the case here by appeal.

Plaintiff introduced evidence tending to show mutual promises of marriage, and sexual commerce on several occasions between herself and defendant, and the consequent birth of a still-born child.   Defendant introduced evidence tending to show that there was no promise and no talk of marriage on either side ; that he had never had sexual commerce with plaintiff ; that the father of her child was, and was by plaintiff, to several persons and on several occasions, declared to be, another man.   He also introduced evidence tending to show that plaintiff was a young woman of bad character for chastity, and the associate of lewd persons of either sex, before and since the date of the alleged promise of marriage ; and that this was unknown to him when he was visiting her.   Respondent introduced evidence in rebuttal, tending to show that her character for chastity was good.

At the close of plaintiff's case the court refused an instruction, asked by the defendant, in the nature of a demurrer to the evidence.   The following instructions were given at the instance of plaintiff :

" 1. The jury are instructed that to maintain the action of the plaintiff it is necessary that they should find a mutual promise to marry between plaintiff and defendant, but it is not necessary that either promise should be expressed, *i. e.*, that any witness should hear the contract made.   On the contrary, the promise of each to the other may be inferred from circumstances.   Nor is it necessary, to maintain the action, that the promise on either side should have been

made in writing, to make it valid and binding on both. Whether there was mutual promise to marry between plaintiff and defendant is a question for the jury, to be determined by them from all the proof and circumstances shown in the evidence.

" 2. If the jury find from the evidence that the plaintiff and defendant contracted to marry each other, and that no time was fixed or agreed upon at which the marriage was to take place, then the law is that the marriage was to be performed within a reasonable time; and if you further find from the evidence that the defendant refused or unreasonably delayed to perform such contract, no special request by the plaintiff to defendant to marry her is necessary.

" 3. If the jury believe from the evidence that any witness or witnesses wilfully swore falsely to any matter material to the issue, the jury may exclude the whole of said witness's or witnesses' testimony.

" 4. If the jury find from the evidence for the plaintiff, they ought to assess the damages; and in determining the amount, they ought to find such sum as in their judgment, under all the circumstances of the case, may be a proper indemnity to her for the injury she has suffered in her feelings, affections, and wounded pride, as well as the loss of marriage; and if the defendant has attacked the character of the plaintiff, and failed to sustain such attack, it is proper subject of consideration as aggravating the damages."

To the giving of which instructions the appellant at the time duly excepted.

And thereupon the court gave the following instructions for defendant:

" 1. If the jury find from the evidence that the plaintiff was guilty of lewd and unchaste conduct with other men prior to the alleged breach of the alleged contract to marry, and the defendant was ignorant of the same and believed her to be a chaste and virtuous woman, then the plaintiff cannot recover.

"2. Before the jury can find for the plaintiff upon the cause of action set out in the petition, they must believe from the evidence that the defendant actually promised to marry plaintiff, and that she in earnest accepted said promise, and that the plaintiff actually and in earnest promised to marry defendant, and that he actually received her said promise in earnest; and unless the jury believe such mutual promises were so given and received they will find for the defendant, and in such case it makes no difference whether defendant had sexual intercourse with plaintiff or not, or was not the father of plaintiff's child."

The promise to marry is, in law, like any other contract. The promise must, in general, be reciprocal, and obligatory upon both parties. It is not necessary to prove an express promise *totidem verbis;* but the contract must be evidenced by the unequivocal conduct of the parties, and by a definite understanding between themselves, their friends, and relations that a marriage is to take place; and, when the promise of the man is proved, evidence of the woman having demeaned herself as if she concurred, is sufficient to establish her promise to marry him. The contract is not within the statute of frauds, and need not be reduced to writing. The contract is binding though the precise time of completing it is not agreed upon; and, in such a case, the law construes it to be a promise to marry in a reasonable time, upon request. Where the promise does not ascertain and fix the time, a special request must be laid in the declaration and proved on the trial, unless the defendant, by marrying another, has incapacitated himself from performing his engagement, in which case that fact should be alleged.

These principles may be regarded as the law of the subject. They are founded upon well-considered decisions, which have been followed both in England and America, and are laid down in all the books on pleading and evidence, and by all the text-writers on the subject of contracts. 1

Chitty on Con. 2, 790 ; 2 Pars. on Con., 6th ed., 63, 64 ; 1 Archb. N. P. 281 ; 2 Saunders on Pl. 177 ; Roscoe's Dig. Ev. 262 ; 1 Tidd's Pr. 382 ; 2 Bac. Abr. 530 ; 1 Rob. Abr. 1, 5, 22 ; *Harrison* v. *Cage*, 1 Ld. Raym. 386 ; *Sutton* v. *Mansell*, 1 Salk. 10.

There is no evidence in the case at bar that plaintiff, or any one in her behalf, ever offered on her part to fulfil this alleged mutual promise of marriage ; or that defendant, who, for all that appears, is as much in a condition to marry as ever he was, would not have fulfilled his alleged engagement, by marrying her, if he had been asked to .do so before the suit. There was a delay which may have been unreasonable, but evidence of delay is not evidence of refusal, but rather evidence that the contract was abandoned by mutual consent. In any case, where there has been no request upon the defendant to fulfil the contract, and the contract was indefinite as to time, there is no cause of action. 2 Pars. on Con., 6th ed., 63, 64.

As to what will constitute a tender or refusal, there may be some question ; but that an offer of some kind and a refusal of some sort must be alleged, and proved if denied, there can be no question.

Thus, in our own State, where the defendant offered to marry plaintiff in a month or so, and, at or about the expiration of the month, the plaintiff stated in presence of defendant that she was ready to marry him, and had made preparation to do so, the court held that a modest woman could not be expected to speak more plainly ; that this was a tender ; and that, for this reason, it was no error to refuse to declare to the jury that no evidence of an offer to marry by the plaintiff had been given. *Green* v. *Spencer*, 3 Mo. 228.

So, in *Gough* v. *Farr*, 2 Car. & P. 631, the court held that, where defendant had not married another, there must be proof of tender and refusal ; but as in that case the father of the girl went to defendant and asked him if he

meant to perform his promise, and defendant replied, "Certainly not," this was held to be a sufficient tender.

In *Clements* v. *Moore*, 11 Ala. 36, the court held the plaintiff excused from reminding defendant of his engagement and again offering him her hand, and that it was not necessary to allege tender and refusal, because in that case the petition alleged that defendant had married another woman.

It is, however, contended by counsel for respondent that no demand and refusal is necessary before bringing suit, and we are referred to many cases in support of this proposition. We have looked at these cases, and do not find that they are in disaccord with what we regard as the well-settled law on this subject. A review of them will show this.

We are first referred to *Wells* v. *Padgett*, 8 Barb. 324, in which we find that the question is not at all as to demand and refusal, but as to evidence of a promise to marry on the part of the woman. The court says (*per* Mason, J.): "In an action by a lady for breach of promise of marriage, it is not necessary, for the purpose of making out the mutual promises requisite to support the action, to prove that plaintiff, by words, consented to accept the defendant. The jury may infer such consent from the circumstances of her making no objections at the time, and from her receiving visits from the defendant as suitor. It would be indelicate to expect that she should consent in words. No doubt the jury must be satisfied that there must be mutual promises. The jury have found so in this case, and I am of opinion that there is evidence from which they may be inferred." As to the correctness of this ruling there can be no question. As to the *obiter* that it is indelicate to expect a woman to accept, in so many words, a man who offers to marry her, it may go for what it is worth. It is believed that most men expect, and get, a plain answer from the woman to whom they make a serious offer of marriage, and see nothing indelicate about the matter at all. Questions of deli-

cacy are merely questions of taste, and the maxim is, *De gustibus non est disputandum.*

The next case is *Coil* v. *Wallace*, 24 N. J. 291. In that case the necessity of demand and refusal is conceded; but it is held that defendant was estopped by his own acts and declarations to deny demand. Before suit brought, the defendant had admitted to the attorney of plaintiff that he had married another woman. "The direct influence upon Mr. Chandler," attorney of plaintiff, says the court, *per* Ogden, J., "was to prevent him from requiring the defendant to marry his client. He was satisfied the plaintiff was under legal disability." The court, therefore, held defendant estopped to say that there was no demand, because his admission that he was married, though untrue, had been acted on by the plaintiff, and no demand was made, because, owing to defendant's false statement, none was believed to be necessary.

In *Willard* v. *Stone*, 7 Cow. 22, it is held that there must be a tender and refusal. In that case an explanation of defendant's conduct in refusing to carry out the contract to marry plaintiff was demanded of him by a friend of plaintiff, in the presence of both parties, and defendant refused to give any explanation. This was held a sufficient fulfilment of the indispensable condition of demand and refusal.

We are next referred to *Prescott* v. *Guyler*, 32 Ill. 323. That case does not deny the doctrine as we have laid it down. It maintains the necessity of demand and refusal, but holds that there had been circumstances shown from which the jury might well find it; that the request to marry need not be made by the plaintiff herself, but that it is sufficient if made by her father, or any friend whose authority to do so may be inferred from the relations existing between the parties. In that case, an interview was shown between the father of the plaintiff and the defendant, in the presence of the plaintiff, in which the father told defendant that if he did not want plaintiff, he should not have her sis-

ter Julia. Defendant thereupon said that he liked Julia
better than Catherine, the plaintiff. The court says this
was a demand and refusal, and that in any civilized coun-
try the woman would consider it a rejection of her offer,
and that she was discarded for another; which is true
enough.

*Martin* v. *Patton*, 1 Litt. 236, is another case to which
we are referred by counsel for appellant. We must think
that this case got into his brief by mistake, for it ex-
pressly decides (1) that in a declaration for breach of
promise of marriage, alleging a promise to marry on request,
a special request must be averred, or no action will lie;
(2) that, if the declaration alleges that the promise is to
be performed within a reasonable time, it ought to contain
a traversable allegation of readiness on the part of the
woman. This case follows and refers to the case of *Burk*
v. *Shain*, 2 Bibb, 341, where the same doctrine is held,
and where it is said that, in an action for breach of promise
of marriage, an offer to perform on her part must be alleged
by the plaintiff, and that a mere averment of readiness to
perform will not do; "because," says the court, "one
party may be ready and willing, but at a remote distance
from the other, who may in like manner be ready and will-
ing, and cannot be said to be in default."

*Seymour* v. *Gartside*, 2 Dow. & Ry. 55, is an English
case. It merely holds that the words "did not, nor would,
within such reasonable time aforesaid, or at any time after-
wards, marry the plaintiff, but hath wholly neglected or
refused so to do," are good *after verdict*. This has noth-
ing whatever to do with the question. Verdict cures the
insufficient statement of a good cause of action. The court
says, *obiter*, in rendering the opinion, that the words neces-
sarily imply a request to marry; and that "it can hardly
be expected that a lady should say to a gentleman, 'I am
ready to marry you, pray marry me.'" But the court says,
"after verdict the count will do," and implies that it would

not do before the verdict; which was unquestionably the law in England at the time the opinion was rendered.

*Davis* v. *Slagle*, 27 Mo. 602, is the last case on which respondent relies in support of this point. That case merely cites and follows *Seymour* v. *Gartside*, and holds that in an action for breach of promise the verdict will not be set aside because the petition is defective in not alleging demand and refusal in apt and explicit terms.

We are of the opinion that the plaintiff in an action of this character must allege and show, not only that defendant did not marry her, but also that she was willing and offered herself to marry him, and that he refused her, before suit was brought; or, at least, that he refused her positively and unequivocally, so as to relieve her of all necessity of making an actual tender of herself to him to marry him. Allowance will of course be made, even in an action of this nature, for that natural modesty which is the glory of the sex, but which the law considers to be not wholly inconsistent with bringing an action by the woman against the man for a money compensation for a breach of a contract of a character so personal and peculiar as this. In considering what will fulfil the conditions of a tender by the woman to the man, the law will make allowance for the reticence and modesty which woman cannot lose without doing violence to her nature. From the testimony of plaintiff herself, in the case at bar, it is quite plain that she could not possibly have been restrained by any feelings of decorum from expressing to plaintiff in the plainest way any wish she might have entertained on this subject. But, in truth, there was no evidence of a tender, either bashful or bold ; there was no evidence of a refusal to marry her, either with or without a tender. The instruction for a nonsuit should, therefore, have been given, and instruction No. 2 for plaintiff should have been refused.

2. The trial court also erred in giving instruction No. 4, at the instance of plaintiff. Damages are peculiarly the

province of the jury, and where the defendant rests his defence in part on the bad character of plaintiff, and altogether fails in his proof, the jury, it is held, may consider this an aggravation of damages. So, in *Davis* v. *Slagle*, 27 Mo. 603, an action of the same character as the one at bar, the defendant attempted in his answer to excuse his abandonment of plaintiff by stating on the record that her chastity was bad; and the court held that, as the defendant utterly failed to show any thing against the woman, the imputation on her chastity, deliberately made and sworn to, was a circumstance to be considered by the jury in aggravation of damages. A nominal verdict, as the court says, would have endorsed the slander and ruined her reputation. A false and unwarranted imputation against the chastity of a woman is one of the most cruel and cowardly wrongs which one human being can perpetrate against another, and merits severe punishment. Where, in an action of breach of promise of marriage, the defendant wantonly alleges that the plaintiff is unchaste, without reasonable belief or expectation that he will be able to establish the same by proof, it may be considered by the jury in aggravation of damages; but it cannot be so considered when the allegations are made under circumstances that would warrant a cautious attorney in the belief that they could be established by evidence on the trial. *Denslow* v. *Van Horn*, 16 Iowa, 476. The fact that the jury finds against the defence has nothing to do with it. In the case at bar the evidence was strong of licentious and indecent conduct on the part of plaintiff, and of her maintaining intimate relations with a woman of notorious character. The testimony fairly tended to prove that plaintiff was a person whose character for chastity was not good at the time of the alleged contract, and before that time and since. Such testimony is legitimate in mitigation of damages in an action for breach of contract of marriage, and it is error to declare to the jury that the introduction of such proof may be considered in aggrava-

tion of damages, without adding, " unless the attack was made in good faith," or unless defendant at the time believed, and had good reason to believe, the charge to be true, or words to that effect. *White* v. *Thomas*, 12 Ohio St. 312.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.