Marva J. PIGGOTT, Appellant,

v.

John J. MILLER, Respondent.

No. KCD 28908.

Missouri Court of Appeals,
Kansas City District.

Oct. 11, 1977.

Charles C. Shafer, Jr., Herman M. Shaffer, Kansas City, for appellant.

Catherine Earnshaw Hobbs, Earnshaw & Earnshaw, Lee's Summit, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

The appellant (plaintiff), then a minor, through her next friend, filed suit for actual and punitive damages against the respondent (defendant) on May 12, 1972. This suit was drafted in two counts. Count I sought damages for breach of a promise to marry, and Count II sought damages for seduction, a resulting pregnancy, medical expenses, and incidental damage to reputation, embarrassment and nervousness resulting therefrom.

The defendant filed a motion to dismiss both counts. His motion to dismiss Count I was based upon the fact that the petition

showed upon its face that at the time of the association of the parties the defendant advised the plaintiff that he was married and that a promise to marry "by or to a person who, to the knowledge of the other party, has a spouse living is absolutely void in its inception and is ineffectual to give rise to a cause of action against this defendant."

The motion to dismiss Count II was based upon the asserted grounds that prior to 1968 there was no duty upon the putative father of an illegitimate child to either support such child or pay for the medical care of the mother during the pregnancy or birth. The defendant pleaded that while, since 1968 "illegitimate children have equal rights with those of legitimate children to require support by their father, there have been no decisions broadening this obligation to require a father to pay for medical care and attention of the mother during pregnancy."

On July 7, 1972, Division No. 8 of the court below sustained the motion to dismiss Count I of the petition and overruled it as to Count II, without memorandum and without designation as a final appealable order. Thereafter, the cause was administratively assigned to Division No. 1, and on June 28, 1976, the parties and their counsel appeared in open court for trial on Count II. In pretrial proceedings the court below reconsidered defendant's motion to dismiss Count II and held that it did not state a cause of action because of the fact of defendant's known existing marriage at the time of the seduction under promise to marry; that no civil action for damages could be maintained by the seducee (plaintiff) even though the evidence might support a criminal charge under Section 559.310 RSMo 1969 which makes it a felony upon a finding of seduction of a female under 18 years of age; and that the court was controlled by the decisions of *Roper v. Clay*, 18 Mo. 383 (1853); *Jordan v. Hovey*, 72 Mo. 574 (1880); and *Fitch v. Coats*, 167 S.W.2d 478 (Mo.App.1943). The court thereupon entered an order dismissing Count I (already dismissed) and Count II, and assessing costs against the plaintiff. It is from this judgment of June 28, 1976 that plaintiff appeals.

The plaintiff has not briefed or argued the validity of the cause of action on contract for breach of promise of marriage as alleged in Count I of her petition so that this need not be considered here. She raises one assignment of error or point on this appeal, namely:

"The trial court erred in dismissing Count II of plaintiff's petition for failure to state a cause of action upon which relief could be granted because the Constitution of Missouri, the statutes of Missouri and national modern case law clearly indicate that the woman seduced is the real party in interest and she should be allowed to sue in her own name for damages occasioned by her own seduction."

In essence, it appears that the plaintiff's position in the court below (and here) is that, entirely aside from the contract action for breach of promise of marriage, the plaintiff had a cause of action, civil in nature and sounding in tort, for her wrongful seduction, which was asserted in Count II of her petition. Further, she asserts that she is the real party in interest with regard to this claim.

The defendant's position is that the woman seduced (plaintiff) "is not the real party in interest" and was not entitled to maintain the action stated in Count II "in her own name". Implicit in this position as stated in defendant's brief is the recognition that such a cause of action *exists* under the facts stated but is sought to be advanced by the *wrong* plaintiff. In the argument portion of his brief it appears (somewhat obscurely) that he also seeks to apply the strict contract rule of breach of promise of marriage to the civil damage action for seduction.

With the issues before this court thus drawn, it is essential that the plaintiff's pleaded cause of action be accepted as true on review of the order of dismissal. Summarized Count II of plaintiff's petition pleads (directly and by means of adoption by reference of Count I allegations):

The plaintiff (then 18 years old and unmarried) and the defendant associated to-

gether for several months in the early part of 1972, during which time he advised her that he was married but was in the process of securing a divorce in order that he could marry plaintiff. A petition for divorce against his wife was filed by defendant but was later dismissed. On numerous occasions the defendant promised to marry plaintiff and she agreed and believed that they were engaged and advised her friends and family of such fact. Relying upon this, the plaintiff permitted defendant to overcome her will power and have sexual intercourse with her, as a result of which she became pregnant. The defendant's acts in this regard were wilful, wanton and malicious. The defendant refused to follow through with his divorce. The plaintiff has suffered severe damage to her reputation in the community and her chances of marriage lessened; she has incurred, and will in the future incur, medical and hospital expenses; and has suffered grievous humiliation, embarrassment and great mental and emotional disturbance. She seeks both actual and punitive damages.

■ In this posture the single issue presented on this appeal is whether a seduced female may maintain a civil action for damages in her own name for her own seduction.

The existence of a cause of action for damages for seduction is of ancient common law origin although, at common law, such a cause was based solely upon the relationship of master and servant and was intended to compensate the master for the loss of the services of his servant, wife or minor child. Wives and minor female servants in this context were considered a type of superior servant of the husband and father. 79 C.J.S. Seduction § 3 p. 956; *Slawek v. Stroh*, 62 Wis.2d 295, 215 N.W.2d 9, 18 [18] (1974); 8 Holdsworth, History of English Law, 2d Ed. 1937, 427 FF; Wigmore, "Interference with Social Relations", 21 Am.L. Rev. 764 (1887). Thus, the common law recognized the possible wrong visited by the seduction but lodged any right of redress therefor in the master and denied such right to the person violated. Such a result

has been denominated a "legal fiction" and has been strongly criticized since the early case law in this country.

The court in the case of *Magierowski v. Buckley*, 39 N.J.Super. 534, 121 A.2d 749, 754 (1956) quoted with approval from the early case of *Van Horn v. Freeman*, 6 N.J.L. 322, p. 325 (1796) wherein it was said:

" * * * it is in general a mere fiction of the law, in order to give some kind of compensation for an injury of the most atrocious kind, which would otherwise be remediless. In these cases, generally speaking, little or no service is either performed by the daughter or expected from her; and were it not for the highly respectable characters by whom this fiction has been supported and recognized, I should not hesitate to express my opinion that it disgraces the jurisprudence of the country."

Under Section 507.010, RSMo 1969, it is provided that "[E]very action *shall* be prosecuted in the name of the real party in interest * * *." This mandate leaves no room for indulgence in the common law fiction that a seducee cannot prosecute an action for damages for her seduction resulting in damages, injuries and expenses and incidental injury or damage sustained by her *personally* as alleged in Count II of plaintiff's petition. Plaintiff is the real party in interest here.

Respectable authorities from other jurisdictions have so held in applying similar statutes. *Hood v. Sudderth*, 111 N.C. 215, 16 S.E. 397 (1892); *Johnson v. Harris*, 187 Okl. 239, 102 P.2d 940, 942 [10, 11] (1940); and *Watson v. Watson*, 49 Mich. 540, 14 N.W. 489 (1883).

In a recent opinion of the St. Louis District of this court, the common law and modern law in the field of civil actions for seduction is discussed in an exhaustive and scholarly manner. It was there specifically held that a seducee could maintain an action for damages arising from her seduction. The conclusions therein reached, so far as applicable to the case at bar, are adopted. *Breece v. Jett*, 556 S.W.2d 696, decided August 30, 1977, Simeone, C. J.

The court below based its ruling largely upon the ancient cases of *Roper v. Clay, supra,* and *Jordan v. Hovey, supra,* and the case of *Fitch v. Coats,* supra.

*Roper v. Clay, supra,* followed the common law fiction that the seducee could not maintain the action in her own name, but in the light of the "real party in interest" statute this decision is no longer authoritative.

*Jordan v. Hovey, supra,* also applied the common law rule but in a case where the seducee sought to maintain her cause of action against her seducee's father, who it was claimed "advised" her to have intercourse with his son, to whom she was engaged.

*Fitch v. Coats, supra,* was a suit for breach of contract of marriage and seduction in one count. The court held that, since at the time of the alleged promise the defendant was married and the plaintiff knew of this fact, the contract action could not be maintained. The court carefully noted (167 S.W.2d l.c. 486) that the case was not "a suit for damages for seduction".

These cases are no longer persuasive or binding authority. As was said in *Slawek v. Stroh, supra,* 215 N.W.2d p. 18 [19]: "To extend the right of recovery to the woman seduced does not create a new cause of action insofar as the seducer is concerned—his conduct is reprehensible and he should respond in damages whether it be to parent or the woman herself. This is especially true at this stage of our social development when it is no longer realistic to think of the services and wages of a woman belonging to her husband or parents with the same inflexibility as we did one hundred years ago."

A seduced female may properly maintain an action for damages sounding in tort against her seducer in her own name as the real party in interest.

However, the real party in interest statute does not *create* any cause of action and a correct resolution of this appeal requires a determination of whether or not the plaintiff has stated or could state a cause of action where the very gravamen of the action is based upon a promise to marry. In other words, does the legal fact that plaintiff cannot maintain a *contract* action based upon a breach of a promise to marry because of the inability of the promisor-seducer by reason of an existing marriage destroy her action in tort?

The basis of an action for seduction arises from false promises, artifice, solicitation, importunity, fraud and the like, 79 C.J.S. Seduction § 1, p. 955, resulting in improper relations (and in this case pregnancy also). While the contract action (breach of promise) and the tort action (damages for seduction) may arise from the same transaction or within the same time frame the failure of the contract action does not necessarily bar the tort action. *Kralick v. Shuttleworth,* 49 Idaho 424, 289 P. 74, 78 [12–14] (1930); *Kirkpatrick v. Parker,* 136 Fla. 689, 187 So. 620, 624 [5] (1939). This is true even though the promise of marriage was void, because of the legal incapacity of the promisor, and both parties knew that it could not be enforced, if the woman believed the promise and yielded because of it. *Hawk v. Harris,* 112 Iowa 543, 84 N.W. 664, 665 (1900); *Rabeke v. Baer,* 115 Mich. 328, 73 N.W. 242, 243 (1897); 70 Am.Jur.2d, Seduction, § 6, p. 59.

In the case of *State v. Brock,* 186 Mo. 457, 85 S.W. 595, 596 (1905), the Supreme Court of Missouri said:

"Any person capable of seducing and debauching a female can make a promise of marriage * * *. *It would be strange, indeed, if a person could in this way violate both law and morals, and not be held amenable to the law, but shield himself upon the ground that he was not capable of making a valid contract. Such is not the law.*" (Emphasis added)

The plaintiff here alleged facts from which it could be found that the promise of marriage was made, the defendant's divorce action was pending, she relied upon and believed the promise and that as a result the defendant was able to "overcome her will power". Further, she states that de-

fendant's "acts were wilful, wanton and malicious". No attack was made upon the petition for lack of specificity or request for a more definite statement.

While plaintiff must assume a heavy burden of proof and her petition may be subject to amendment, she has stated a cause of action in tort for damages for seduction.

The dismissal of Count I is affirmed. The dismissal of Count II is reversed and the cause of action as to that count is remanded for further proceedings in accordance with this opinion.

All concur.