Marie K. GRECO, Plaintiff-Appellant,

v.

Donald E. ANDERSON,
Defendant-Respondent.

No. 41469.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 12, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1981.

Application to Transfer Denied
June 8, 1981.

**430**

---

Gerritzen & Gerritzen, Ray A. Gerritzen, St. Louis, for plaintiff-appellant.

S. Gerald Miller, Curtis L. Mann, Clayton, for defendant-respondent.

SMITH, Presiding Judge.

Plaintiff appeals from the action of the trial court in granting defendant judgment in accordance with his motion for directed verdict, and thereby nullifying plaintiff's verdict for $3,000 from the jury. Plaintiff's cause of action is based upon seduction by virtue of a promise to marry.[1]

Plaintiff, forty-five at the date of trial, was a well-educated widow with three children at the time that she met defendant in December, 1974. Approximately six weeks later, on February 14, 1975, she had sexual intercourse with defendant. She testified that this occurred solely because of defendant's promise to marry her. At the time both parties were residents of Massachusetts and the seduction occurred in that state. During most of the remainder of 1975 the parties had intercourse approximately once a week. Throughout this period they dated extensively and were together a great deal of the time. In October, 1975, defendant left Massachusetts for employment elsewhere. He took up residency

---

1. From plaintiff's pleadings and brief it is difficult to tell whether her theory was seduction or was for breach of promise to marry. If the latter was the theory it is barred by Sec. 432.-010, RSMo 1978, as there was no evidence of a written promise.

in Kansas City, Missouri, and eventually established a residence in St. Louis County. Throughout the period of separation the parties were in frequent communication both by telephone and letter, each continuing to profess their love for the other and their intention to marry. In July, 1976, plaintiff, with her children, came to Missouri to visit defendant for two weeks. They had intercourse on several occasions during this visit, both in Kansas City and at Bennett Springs. Upon her return to Massachusetts the communications continued including one call in which defendant suggested they fly to Las Vegas to get married. Plaintiff declined this invitation because it was made at the spur-of-the-moment. In December, 1976, plaintiff again visited defendant in Missouri, this time in St. Louis. Their sexual activities resumed again on this trip. Defendant drove plaintiff back to Massachusetts after this visit. During the relationship defendant had borrowed $7,000 from plaintiff which was never repaid.[2] In February or March, 1977, defendant became engaged to be married to another woman and so informed plaintiff. He was subsequently married. This suit followed.

The trial court sustained defendant's motion for judgment on two grounds. We need only deal with one. That is that no cause of action exists here because the conduct upon which it is based occurred in Massachusetts which does not allow such a cause of action. Plaintiff contends that seduction is a continuing tort and that the sexual conduct in Missouri authorizes the suit here.

▮▮▮ A common law tort of seduction is recognized in Missouri. *Breece v. Jett*, 556 S.W.2d 696 (Mo.App.1977). To establish the cause of action the conduct of the defendant "must consist of such solicitations, importunities, misrepresentations, knowingly

false promises or artifices, including a false promise to marry for the purpose of seduction, which lead the plaintiff, a chaste unmarried woman, to deviate from the path of rectitude; . . . ." *Breece v. Jett, supra,* l. c. 707. The action is a species of fraud. It is the loss of chastity to which the tort is directed. Continuation of the sexual conduct between the parties after the initial act does not cause a continuing tort or create a series of torts. *Buckles v. Ellers,* 72 Ind. 220 (1880); *Davis v. State,* 28 Ga. App. 372, 110 S.E. 922 (1922); *People v. Nelson,* 153 N.Y. 90, 46 N.E. 1040 (1897); *State v. Stoker,* 190 S.W. 294 (Mo.1916).[3] It is recognized that a woman whose chastity has been compromised can "reform" and thereafter be seduced again by the same man. *State v. Sharp,* 132 Mo. 165, 33 S.W. 795 (1896); *State v. Fogg,* 206 Mo. 696, 105 S.W. 618 (1907); *State v. Stoker, supra; Kralick v. Shuttleworth,* 49 Idaho 424, 289 P. 74 (1930). But such reform requires a termination of the relationship and a new inducement to resume it. *State v. Stoker, supra; Kralick v. Shuttleworth, supra.*

We have examined the testimony in this case and find no indication of such reform. The relationship of the parties remained the same from the date of seduction until the complete termination of the relationship in 1977. The geographical separation of the parties prevented continuation of the sexual acts, but not the communications of love between them, or the continuing expressions of intention to marry. Plaintiff made two trips to Missouri to visit defendant and in each case immediately resumed the sexual activities which distance alone had precluded. The language of *State v. Stoker, supra,* is particularly apposite here:

"We have scrutinized her own testimony and the rather lengthy record before us, and find nothing to indicate that during the period between the first and last acts of intercourse there was such refor-

**2.** Claim for this money formed the basis of the first three counts of plaintiff's petition. Defendant confessed judgment on those counts.

**3.** Several of these cases arose under criminal prosecutions for violation of a seduction statute. Comparison of those cases with civil

cases arising under either statutes or common law does not reflect any notable difference in the treatment of the question of when the cause of action for seduction arises, or what the nature of that cause of action is.

mation on her part as to save her from the law's condemnation or place her within its protection. She frankly admits that during this whole period there was but one thing which she considered in determining whether to yield to these acts, and that was appellant's promise to marry her, and this was the same inducement which caused her to first yield. There is not the slightest intimation that she was not willing at all times to thus submit when she regarded herself as engaged." (190 S.W. l. c. 295).

The seduction for which plaintiff seeks to recover was complete on February 14, 1975, for at that point her chastity was compromised. The relationship continued and no new inducement was necessary to renew it. The fact that continuing expressions of intent to marry were made, or even that the absence of such expressions might have caused plaintiff to terminate her sexual activities with defendant, does not establish reformation resulting in a new or separate seduction.

██ "The seduction occurred in Massachusetts where both parties were residents. The cause of action was complete before any contact with Missouri occurred.[4] Massachusetts does not recognize a cause of action for seduction upon a false promise to marry. In *Thibault v. Lalumiere,* 318 Mass. 72, 60 N.E.2d 349 (1945) the court held that under Massachusetts common law a defiled woman cannot recover for her own seduction because of her participation in the wrong. Damages for the seduction could however be recovered as damages for breach of promise to marry. However, that cause of action had been abolished by legislative action. The court held that breach of

such promise is no longer a legal wrong and that even torts for fraud in making such a promise are prohibited by the legislative action. Seduction is such a tort. *Breece v. Jett, supra.* No cause of action accrued from the actions of the defendant in the place where the conduct occurred, where the injury occurred, where the parties lived, and where plaintiff still lives. Under *Kennedy v. Dixon,* 439 S.W.2d 173 (Mo. banc 1969) and *Griggs v. Riley,* 489 S.W.2d 469 (Mo.App.1973) the test of what law applies depends on which state has the most significant contacts. Here the most significant contacts involve Massachusetts. *See also, General Dynamics Corp. v. Selb Mfg. Co.,* 481 F.2d 1204 (8 Cir. 1973) cert. den., 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116.

The general principles set forth in Sec. 145 of the Proposed Official Draft of Restatement (Second) on Conflict of Laws, adopted in *Kennedy* which in turn applies the choice-of-laws principles of Sec. 6 of that Restatement, does not justify allowing recovery for personal sexual conduct which cannot support a cause of action in the state in which it occurs and in which the participants are residents. Additionally, *Kennedy* pointed out that if the court was unable to determine which state had the most significant contacts then the *lex loci delicti* rule would apply. That *loci* is Massachusetts. We therefore apply the law of Massachusetts, and in so doing we hold that plaintiff has no cause of action which would allow recovery in this proceeding.[5]

Judgment affirmed.

SATZ and SIMON, JJ., concur.

---

**4.** Plaintiff contends that the marriage of defendant to another was the breach which caused the cause of action to accrue. This confuses the contractual action for breach of a promise to marry with the tort action before us. While the later marriage may be evidence of the false promise of marriage, it is not an element of the tort of seduction, which is complete when the seduction occurs.

**5.** We have noted *Slawek v. Stroh,* 62 Wis.2d 295, 215 N.W.2d 9 (1974) which we regard as distinguishable. There, although the seduction

occurred in Pennsylvania, the plaintiff, who was the male actor, had sought a declaration in the Wisconsin courts for his paternity of defendant's child. Defendant, a Wisconsin resident, counterclaimed for damages for seduction. In that posture the court held the defendant (and her child's) residence and the invocation of jurisdiction by plaintiff established significant contacts with Wisconsin sufficient to invoke Wisconsin law. Here the seductee does not reside in Missouri and she, not the seducer, has invoked the jurisdiction of Missouri courts.