Alice J. PARKER, Plaintiff-Respondent,

v.

Ronald A. BRUNER,
Defendant-Appellant.

No. 66205.

Supreme Court of Missouri,
En Banc.

Jan. 15, 1985.

Russell X. Thompson, Memphis, Hal E. Hunter, Jr., New Madrid, for defendant-appellant.

James E. Reeves, Caruthersville, for plaintiff-respondent.

PER CURIAM:

This cause was certified to this Court, under Rule 83.01 by a dissenting judge in the Southern District of the Court of Appeals. The certifying judge deems the principal opinion in the Court of Appeals contrary to the decisions in *Greco v. Anderson,* 615 S.W.2d 429 (Mo.App.1980) and *Breece v. Jett,* 556 S.W.2d 696 (Mo.App. 1977). He believes *Greco* and *Breece* "require proof of seduction by clear, cogent, and convincing evidence * * * [and] that the majority opinion does not require such proof."

In *Greco,* there is no mention of the burden of proof required in a seduction case. In *Breece,* the mention of the required burden of proof is obiter dictum and not authority as a precedent in Missouri. "There is no doctrine better settled than that the language of judicial decisions must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision." *State ex rel. Baker v. Goodman,* 364 Mo. 1202, 1212, 274 S.W.2d 293, 297 (banc 1954).

The opinion of the Court of Appeals is not contrary to any previous decision of another appellate court of this State and we are not obliged to retain this cause.

Accordingly, the cause is retransferred to the Southern District of the Court of Appeals. *See Morris v. Granger,* 675 S.W.2d 15 (Mo. banc 1984).

RENDLEN, C.J., and HIGGINS, GUNN, BLACKMAR and DONNELLY, JJ., concur.

LOWENSTEIN, Sp. J., concurs in result in separate opinion filed.

WELLIVER, J., dissents in separate opinion filed.

BILLINGS, J., not sitting.

LOWENSTEIN, Special Judge, concurring.

I concur in result. The certification under Rule 83.01 was not effective for the reasons stated in the majority opinion. That being so, there is really no justifiable reason under the rules for this case to now stay within this Court's jurisdiction. *State v. Higgins*, 592 S.W.2d 151, 152-23 (Mo. banc 1979), relied upon by the dissent involved a transfer on the Western District's own motion prior to opinion. This Court ruled the constitutional question raised as reason for the transfer did not exist, but, relying upon Rule 83.06 and, *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193 (Mo. banc 1972), retained the case in the interest of judicial economy. *Foremost-McKesson, supra,* involved a declaratory judgment and request for injunctive relief by milk distributors over rules and regulations promulgated by the Commissioner of Agriculture which had considerable effect upon the sale of milk in the state. Despite the apparent lack of a substantial constitutional question this Court kept the cause which had come straight from the trial court. Neither the rules nor *Higgins* and *Foremost-McKesson* provide for jurisdiction here of this case which was improvidently certified after opinion. To do otherwise would ameliorate Rule 83.02 which here gives the Southern District the opportunity to address the substantial question raised in the dissent. Although this Court "may" accept transfer after the district's own motion under Rule 83.02, at least that whole court would have had the chance to address the matter. Also still available are the motion's of the losing party to rehear and transfer or to ask this Court to consider transfer. Rules 83.02 and 83.03.

The paucity of cases in Missouri for damages for seduction indicate the lack of urgency to resolve the continuation of the doctrine. Unlike *Higgins,* where a life sentence was imposed for first degree murder, or the activities in *Foremost-McKesson,* this case does not justify allowing circumvention of the whole Southern District's right to first address the matter.

If the posture here were different, and this Court could now consider this case either on motion from the Southern District or on motion of a party, I would favor reversal and abolishing the cause of action for seduction, or allowing a plaintiff to recover only her actual damages and no recovery for punitive damages.

WELLIVER, Judge, dissenting.

I respectfully dissent. The per curiam properly holds that the certificate of the dissenting judge shows no apparent conflict between the cited appellate decisions. It is regrettable that the matter was certified by the single dissenting judge rather than by appellant filing his application to transfer, a procedure I believe still available to him. The real conflict is that this court has never recognized that the participating woman can bring an action for seduction. The trend against permitting the participating woman from bringing such action together with the question of whether such action can be available to participating women and not to participating men are of sufficient general interest in my opinion to require us on the application of appellant to order transfer of the case. For these reasons, I would retain jurisdiction in the interest of judicial economy. *State v. Higgins,* 592 S.W.2d 151, 153 no. 1 (Mo. banc 1979). I would reverse.

The original petition involved only determination of paternity costs of child birth and child support, which subsequently was denominated as Count I of the amended petition. The amended petition added Count II which sought damages for seduction, both actual and punitive. After blood tests, appellant admitted all allegations regarding paternity and by his answer asked the court to fix the amount of costs of the child birth and child support. The matter was tried solely on Count II, which alleged seduction. Respondent received a verdict for twenty-five thousand dollars actual damages and fifty thousand dollars punitive damages. Appellant argues, *inter alia,* that the archaic common law action for seduction should be abolished.

The common law action for seduction is a relic of a lost era. "[S]eduction is the act of persuading or inducing a woman of previous chaste character to depart from the path of virtue by the use of any species of arts, persuasions, or wiles which are calculated to have and do have that effect, and result in her ultimately submitting her person to the sexual embraces of the person accused." 70 Am.Jur.2d Seduction § 1 (1973). The action arose as one of many judicial remedies available for interference with domestic relations. *See generally,* Pound," Individual Interests in the Domestic Relations," 14 Mich.L.Rev. 177 (1916). At common law, the action could be brought only by a parent—generally only the father—who was injured by the loss of services that resulted when their daughter was seduced. The common law offered two reasons why the seduced woman could not bring the action herself. First, the injury that the law protected against was the loss of services by one entitled to the services of the seduced woman. "The law developed as an offshoot of the action for enticing away a servant and depriving the master of his *quasi*-proprietary interest in his services. The wife and minor children were considered, in early common law, as superior servants [above all other servants] of the husband and father; loss of their services became the gist of his action." *Magierowski v. Buckley,* 39 N.J.Super. 534, 121 A.2d 749, 753 (1956). Courts almost uniformly have held that the "action for seduction, in whatever form it may be brought, is founded upon the supposed loss of service by the plaintiff, and it must of course be alleged and proved that the relation of master and servant existed when the injury was committed." *Vossel v. Cole,* 10 Mo. 395, 396 (1847). Some courts came to recognize that the loss of services is but a legal fiction and *sub silento* upheld the parent's action as one for interference with family relations. *Magierowski v. Buckley, supra,* 121 A.2d at 755. Second, "the seduced woman was denied a civil action for damages, on the ground that she was a 'consenting party,' *violenti non fit injuria,* or equally at fault, in *pari delicto.*"

Feinsinger, "Legislative Attack on 'Heart Balm,'" 33 Mich.L.Rev. 979, 986 (1935). A few jurisdictions, however, either by court decision or statute, came to consider the parent's action as another legal fiction and altered the common law by permitting the woman herself to maintain the action. *See generally* W. Prosser & W. Keeton, Prosser & Keeton on the Law of Torts 927 (1984). *See also Magierowski v. Buckley, supra,* 121 A.2d at 752.

Up until 1977, the law in Missouri was well settled that only the person entitled to the woman's services could bring a cause of action *ex delicto* for seduction. "It is settled that a woman cannot maintain an action for damages against her seducer." *Jordan v. Hovey,* 72 Mo. 574, 576 (1880). Prior to 1977, there are only fourteen actions for seduction. *See Carader v. Forehand,* 1 Mo. 504 (1826); *Vossel v. Cole, supra; Grider v. Dent,* 22 Mo. 490 (1856); *Heinrich v. Kerchner,* 35 Mo. 378 (1865); *McKern v. Calvert,* 59 Mo. 243 (1875); *Morgan v. Ross,* 74 Mo. 318 (1881); *Comer v. Taylor,* 82 Mo. 341 (1884); *Smith v. Young,* 26 Mo.App. 575 (1887); *Bailey v. O'Bannon,* 28 Mo.App. 39 (1887); *Hartman v. McCrary,* 59 Mo.App. 571 (1894); *Mohelsky v. Hartmeister,* 68 Mo.App. 318 (1896); *Koenke v. Bauer,* 162 Mo.App. 718, 145 S.W. 506 (1912); *Owens v. Fanning,* 205 S.W. 69 (Mo.App.1918); *Boedges v. Dinger,* 428 S.W.2d 930 (Mo.App.1968) (count two of plaintiff's petition). A somewhat similar cause of action available to the seduced woman was a contract action *ex contractu*—for the breach of a promise to marry, with the woman often alleging seduction as a factor aggravating the amount of damages sought. *See e.g., Green v. Spencer,* 3 Mo. 225 (1834); *Roper v. Clay,* 18 Mo. 383 (1853); *Davis v. Slagle,* 27 Mo. 600 (1859); *Wilbur v. Johnson,* 58 Mo. 600 (1875); *Jordan v. Hovey, supra, Bird v. Thompson,* 96 Mo. 424, 9 S.W. 788 (1888); *Haus v. Moeller,* 107 Mo. 471, 18 S.W. 884 (1891); *Liese v. Meyer,* 143 Mo. 547, 45 S.W. 282 (1898); *Harmon v. Donohoe,* 153 Mo. 263, 54 S.W. 453 (1899); *Cole v. Holliday,* 4 Mo.App. 94 (1877); *Walters*

v. Cox, 67 Mo.App. 299 (1896); *Trammell v. Vaughan,* 158 Mo. 214, 59 S.W. 79 (1900); *Broyhill v. Norton,* 175 Mo. 190, 74 S.W. 1024 (1903); *Clemons v. Seba,* 131 Mo.App. 378, 111 S.W. 522 (1908); *Erwin v. Jones,* 192 Mo.App. 326, 180 S.W. 428 (1915); *Fitch v. Coats,* 167 S.W.2d 478 (Mo. App.1943); *Boedges v. Dinger, supra.* This Court has never chosen to depart from its holdings prohibiting the woman from bringing the action for seduction. The court of appeals, however, in the instant cause and in three other recent cases have enlarged the tort action by permitting the woman to bring the suit. *Greco v. Anderson,* 615 S.W.2d 429 (Mo.App.1980); *Piggot v. Miller,* 557 S.W.2d 692 (Mo.App.1977); *Breece v. Jett,* 556 S.W.2d 696 (Mo.App. 1977). *See generally* Comment, "Seduction and Fraud—An Honorable Marriage?" 47 UMKC L.Rev. 464 (1979).

The factors prompting the public outcry during the mid 1930's against actions for seduction and other related torts,[1] coupled with the changing public mores and enlightened social conscience suggests that we abolish rather than enlarge the tort of seduction which the judicial branch itself created. *Cf. Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599, 606 (Mo. banc 1969). During the 1930's, "[p]ublic opinion almost universally favored the abolition" of such actions. *Magierowski v. Buckley, supra,* 121 A.2d at 757. Some of the reasons for this national attention and national trend are suggested by Prosser and Keeton:

> Those actions for interference with domestic relations which carry an accusation of sexual misbehavior—that is to say, criminal conversation, seduction, and to some extent alienation of affections—have been peculiarly susceptible to abuse. Together with the action for breach of promise to marry, it is notorious that they have afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force settlement.

There is good reason to believe that even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives; that it is impossible to compensate for such damage with what has decisively been called "heart balm;" that people of any decent instincts do not bring an action which merely adds to the family disgrace; and that no preventive purpose is served, since such torts seldom are committed with deliberate plan.

W. Prosser & W. Keeton, *supra,* at 929. Additionally, Professor Feinsinger explained that "[t]he underlying explanation is probably a realization of the failure of these actions to accomplish their original social purposes, and their non-conformity with changed *mores* concerning sex morality, the status of women, and the functions of the family." Feinsinger, *supra,* at 979. A similar sentiment was expressed by Judge Simeone, in his scholarly court of appeals opinion in *Breece v. Jett, supra.*

> Whether an action for seduction should be retained in contemporary society as a matter of judicial policy is highly questionable. The arsenal of such judicially created remedies has, in modern times, been abolished by legislatures of several states for a multitude of reasons. Recent social trends and the changing mores of contemporary society concerning sex and morality and the new found status of women may well make the action for seduction a remedy of a bygone era. In many states civil actions for sexual involvement have been abolished by the so-called "Heart Balm Statutes." There has come to be a realization today that actions of this kind have failed to accomplish their original social purpose and are considered by many jurisdictions to be socially unwise. Such actions are subject to great abuses, causing embarrassment, humiliation and damage to persons who may be wholly innocent and

---

**1.** See Note, "Avoidance of the Incidence of the Anti-Heartbalm Statutes," 52 Colum.L.Rev. 243 (1952).

perhaps such actions afford a fertile field for blackmail and extortion.

The woman of today is not the woman of yesteryear. She has a new-found freedom. The modern adult woman is sophisticated and mature. The former notion that women belong to the weaker sex has long been abandoned. The modern woman is not "easily bequiled" and does not easily fall to the "wiles" of man. Women desire and should be held to a reasonable responsibility.

While we believe that an action for seduction is socially unwise in modern society, we believe that as an intermediate appellate court we cannot abolish the action.

*Id.* at 707–08. Retaining the cause of action for seduction can only mean perpetuating a false stereotype of the modern woman. It is not the function of the judiciary to assist in perpetuating such archaic mores.[2] Other remedies are available which are not based upon fictions or a tort embodying debasing assumptions of women.

Although our brother Simeone did not have an occasion to make his words in *Breece* a pronouncement of this Court, the time has come for us to do so. We should abolish the action of seduction.

The cause should be reversed.

---

**2.** Although I would dispose of this case for the reasons expressed by my opinion, I also have grave reservations over whether the law of seduction would pass constitutional muster. The cause of action favors outmoded stereotypes of women and thereby denies men the right to sue for seduction. There is no valid reason for such a distinction, W. Prosser & W. Keeton, *supra,* at 926, and the constitutionality of such a classification is highly questionable. *See Kline v. Ansell,* 287 Md. 585, 414 A.2d 929 (1980) (the common law cause of action for criminal conversation unconstitutional).