Patricia REHG, a Minor, by Her Natural
Guardian and Parent, John Charles
Rehg, Plaintiff-Respondent,

v.

Ronald GIANCOLA, Defendant-Appellant,

No. 31908.

St. Louis Court of Appeals.

Missouri.

May 18, 1965.

Rehearing Denied June 21, 1965.

Lawrence O. Willbrand, St. Louis, for defendant-appellant.

John D. Hasler, St. Louis, for plaintiff-respondent.

BROADDUS, Special Commissioner.

This is an action for breach of promise of marriage. Plaintiff recovered a verdict and judgment. Defendant has appealed.

Plaintiff's evidence was that defendant and a friend of his were introduced to her on a Friday night late in April of 1962 at a drive-in restaurant in St. Louis County where she was sitting in a car with four other friends. Plaintiff was at that time seventeen years of age and defendant was twenty-two. Plaintiff was a senior in Ritenour High School and living at home with her parents. Eight days later, on the 5th of May, Saturday, defendant telephoned her at her parents' home and asked her to go out for the evening and plaintiff accepted, defendant came by the home of plaintiff that evening, was introduced to her parents and took plaintiff out in the automobile of defendant. That evening defendant asked plaintiff to go with him on a picnic the following day on Sunday at Creve Coeur. On the next day, Sunday, May 6, plaintiff accompanied defendant on the picnic where ten other couples were present. Beer and soft drinks were served and that evening on the way home defendant drove out a lonely road in order "to talk" to plaintiff and while parked on this road defendant asked plaintiff if she would consider marrying him and plaintiff told him she did not know him well enough, would have to talk with her parents about it and would have to have time to "think about it." Defendant told her that he made good money as a carpenter and could take care of her and their children. Defendant pressed his feelings for plaintiff upon her, told her he loved her and after holding out such promise of marriage and the use of "overpowering force", plaintiff submitted to sexual relationship with defendant. Plaintiff had

never had such a relationship with another man before.

They made plans to be together the next Friday evening and went to a drive-in theatre on that night. Afterward, and driving on a different road from the previous week, defendant again told plaintiff how strongly he felt about her, and that he hoped she would consider his proposal and she told him that she would. Defendant again pressed plaintiff for a relationship that evening and plaintiff told him she thought they should wait until after they were married, but defendant told her it didn't matter and that a lot of couples had this relationship before marriage and subsequently, plaintiff again submitted. Plaintiff saw defendant the following Saturday and talked to him during the week several times by telephone. Plaintiff went out with defendant a total of about seven times from the 5th day of May to the week of her high school graduation party and dance scheduled on May 31, to which event defendant had promised plaintiff he would take her and for which he gave her the money to purchase the tickets. On the night of the graduation party and dance, plaintiff waited at home all evening for defendant to come as they had planned, but defendant never came nor 'phoned the entire evening. After the graduation exercises the following day, plaintiff accompanied her aunt and uncle who were visiting from Arkansas, back to their home where she remained with them until the first week of July when she returned to St. Louis. While she was gone, defendant 'phoned her home in St. Louis "a couple of times."

Upon plaintiff's return to St. Louis, defendant had a friend of his telephone her and then defendant got on the 'phone and asked plaintiff if he could come over to her home. She asked him not to come, but defendant came anyway and brought his friend and another girl with him. When he arrived at her home, defendant urged plaintiff and his friends do likewise, to take a trip with him over the weekend to a resort in Southern Missouri which plaintiff refused. One week later the friend of defendant again called her on the 'phone and asked her to talk to defendant and plaintiff refused.

In late July plaintiff's parents took her to their family doctor and after examination, plaintiff was informed she was pregnant about two months. Plaintiff told her doctor she was not married and the doctor asked her if defendant would talk with him. At his urging and her father's request, plaintiff telephoned defendant the same day she visited the doctor and talked with defendant and informed him she was pregnant and asked him to carry out his promise of marriage to her. Defendant told her he was not going to do anything about it, that he had no worries; that plaintiff couldn't prove it anyway and that he had gone "through this before" and had "always won the case." Defendant did tell plaintiff on this occasion, however, that he would take care of it if she would have an abortion.

Plaintiff testified her baby was born on February 8, 1963, nine months to the week after her relationship with defendant. Plaintiff testified that she was employed in August, 1962, at a bakery, making $200 per month, where she had worked for one and a half years previously, part-time during school, but that by the end of her third month of pregnancy, she left that employment because of her physical condition; that she delivered in February, 1963, and went to work in April, two months later, and that she lost the opportunity of making $1800 in earnings during that nine months period. Plaintiff testified that she paid her own expenses for hospital and doctors, a total of $340, and that the expense of caring for her baby was costing her approximately $20 to $25 per week since its birth and that she contributed that sum regularly each week to her parents for herself and the baby.

Plaintiff testified her social life and her contact with friends was completely ruined since the birth of the baby, and that her

old school friends never called her and that if she chanced to see them on the streets they never speak, and that she experienced difficulty in obtaining gainful employment after the child's birth in giving information about herself having a child and being a single person. At the time of the trial, however, she had been at her present employer's for ten months.

Defendant admitted sexual relationships with plaintiff on at least two occasions in May, 1962, but denied ever urging her to do so or ever asking her to marry him.

■ Appellant's first contention is that the trial court erred in overruling his motion for a directed verdict offered at the close of all the evidence. In determining whether or not plaintiff made a submissible case we are required to view the evidence in the light most favorable to plaintiff, the prevailing party, and give her the benefit of all reasonable inferences to be drawn therefrom. We have set out the evidence quite fully. That it discloses that plaintiff made a case for the jury to us seems clear.

■■ Appellant next contends that the court erred in refusing his offered Instruction A. Appellant calls it a converse instruction, which it is not. This instruction merely attemped to limit the amount of damages that would be awarded plaintiff in the event the jury found for her. It was in no sense a true converse of plaintiff's verdict directing instruction or of any element contained therein essential to plaintiff's recovery. It was purely a cautionary instruction. The trial court has a broad discretion in the giving or refusal of cautionary instructions, and a reviewing court will not interfere unless there is a clear abuse of discretion. We find no abuse of discretion in this instance.

Appellant next complains of the refusal of his offered instruction C. It sought to tell the jury that if they found "that plaintiff was not of chaste character prior to the occasion mentioned in evidence, then you should find for the defendant."

■ It is the general rule that plaintiff's unchastity must be specially pleaded as a defense to an action for breach of promise. 11 C.J.S. Breach of Marriage Promise § 27e, page 790; 9 C.J. Breach of Marriage Promise § 56, page 348. No such defense was tendered by appellant. Moreover, no evidence came from appellant of any previous unchasteness and the *only* evidence was from plaintiff that appellant was the first man with whom she had ever had such relations. Other independent witnesses who had known plaintiff since she was a small child attested to her previous good reputation for morality and truthfulness. The contention lacks merit.

■ Appellant charges the court with error in allowing plaintiff to show to the jury for a few moments the eleven month old child alleged by plaintiff to have been born of the relationships with appellant, thereby arousing the sympathy, passion and prejudice of the jury in her favor. Appellant cites no authority in support of his contention. In this state in criminal actions where a defendant's liberty, or even his life, is at stake, it has been held that the exhibition of an infant is within the sound discretion of the court. State v. Wells, Mo., 367 S.W.2d 652; State v. Fogg, 206 Mo. 696, 105 S.W. 618, 621. If such is permitted in criminal cases it can hardly be said that the discretion of the trial court would not be extended to the showing of a child in a civil case.

■ Instruction No. 4 dealt with the measure of damages. Appellant picks at every possible item he beholds in his effort to find something in this instruction which he argues to be erroneous. He first begins by saying that the instruction does not require a finding that the plaintiff was damaged. Instruction No. 3 fully submitted the essential elements of plaintiff's theory of the case in detail and required the jury to find these elements before bringing in a verdict for plaintiff. That instruction when read with Instruction No. 4 fully cast plaintiff's case as one with a contract to marry,

the yielding sexually by plaintiff to defendant in reliance thereon, the conceiving of a child, the refusal of defendant to marry plaintiff—the breach—and Instruction No. 4 carefully submitted qualifying and cautionary requirements before any monetary award be made to plaintiff.

Appellant next complains that by telling the jury that it could consider any alteration of plaintiff's moral and social standing made the instruction vague and gave a roving commission to the jury. Plaintiff pleaded these as elements of her damages and offered testimony to substantiate the same. Certainly, plaintiff was entitled to instruct on this as an element of her damages.

Appellant also complains of vagueness and a roving commission to the jury relative to any increased burden plaintiff might sustain in finding gainful employment, bearing in mind she was a single woman with a child. Plaintiff pleaded this as an element of damage and uncontested evidence was offered by her as to potential employers refusing her employment when it was learned she had an illegitimate child.

And the Instruction does not assume, as appellant argues, that plaintiff was unable to engage in employment for a period of time before the birth of the baby and for several months afterward. These elements were testified to as well as pleaded and no objection was made as to the admission of this evidence and no contrary evidence was offered.

Nor does the Instruction assume that plaintiff sustained medical expenses without requiring a finding to that effect. And these expenses were not "exclusively" recoverable by plaintiff's father, as appellant asserts. They were charged to and paid by plaintiff. Plaintiff was legally obligated to pay them even though she was a minor.

Finally appellant brings to his argument the theory that expenses of an illegitimate child are not proper items of damage. It is true our courts have ruled that an action will not lie for support brought by the illegitimate children or in their behalf, against the putative father. (State ex rel. Canfield v. Porterfield, 222 Mo.App. 553, 292 S.W. 85; James ―――― v. Hutton, Mo.App., 373 S.W.2d 167, and Heembrock v. Stevenson, Mo.App., 387 S.W.2d 263.) However, in the instant case we are not dealing with the general liability of a father for the support of his illegitimate child, but with the question as to what constitutes the proper measure of damages for breach of the contract of marriage.

In the case of Erwin v. Jones, 192 Mo.App. 326, 180 S.W. 428, the Springfield Court of Appeals affirmed a judgment for plaintiff in a suit for breach of contract of marriage, and the court approved an instruction telling the jury that in assessing the plaintiff's damages it could take into consideration *"the support and maintenance of said child"* born of the relationship between the parties. (Emphasis ours.)

In Liese v. Meyer, 143 Mo. 547, 45 S.W. 282, our Supreme Court in affirming a $10,000 judgment for the plaintiff in a suit for breach of promise stated that the award was not excessive because the sum was such that if capitalized at six percent per year, it would yield $50 per month, "which can scarcely be looked upon as an extravagant amount for the support of herself *and child."* (Emphasis ours.)

In Welge v. Jenkins, 195 S.W. 272, the Texas Civil Court of Appeals in affirming a judgment for the plaintiff in a suit for breach of promise, said it may not deem it necessary to decide the question whether the plaintiff was entitled to recover damages for the support of an illegitimate child born to her as a result of the defendant's seduction of her under promise of marriage, but if such a decision were necessary, it would hold that damages for support and maintenance were recoverable. The court said it is only an assertion of "common-sense" when one says that "if the defend-

ant had not breached his promise, he, and not the plaintiff, would have been liable for the support and maintenance of the child which would have been born during wedlock." And "we think the jury, in awarding damages, should be permitted to take into consideration and allow compensation for the fact that, as a result of the breach of contract, the father has shifted the support of the child from himself and placed it upon the mother." We take the same view, and, being supported by the holding of the Springfield Court of Appeals in the Erwin case, supra, we rule the contention against the appellant.

The judgment was for the right party and should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion of BROADDUS, Sp. C., is adopted as the opinion of this court. The judgment is affirmed.

WOLFE, P. J., RUDDY, J., and J. MORGAN DONELSON, Special Judge, concur.