Marie **BOEDGES**, a minor, by Loraine J. Boedges, Next Friend, James B. Boedges, Sr., and Loraine J. Boedges, Plaintiffs-Respondents,

v.

George **DINGES**, Defendant-Appellant.

No. 33133.

St. Louis Court of Appeals.

Missouri.

May 21, 1968.

Abraham Davis, St. Louis, for defendant-appellant.

Albrecht & Homire, James L. Homire, Jr., R. Forder Buckley, St. Louis, for plaintiffs-respondents.

ANDERSON, Presiding Judge.

There are two separate causes of action stated in separate counts of the petition filed in this action. In Count I, plaintiff, Marie Boedges, by next friend, alleged a contract of marriage with defendant, and charged him with a breach of his promise. She likewise charged him with seduction while under said promise. In Count II, James B. Boedges, Sr., and Loraine J. Boedges, parents of Marie, sought damages for loss of services of their daughter and for the amount which they became obligated to pay for hospital and medical expenses incurred in connection with their daughter's pregnancy, and the birth of a child which resulted from her seduction by defendant. Defendant in his answer denied generally each and every allegation of the petition except the one in Count II which alleged that said plaintiffs were the parents of Marie. The trial in the Circuit Court resulted in a verdict for Marie on Count I for $12,500.00 and for the parents on Count II for $400.00. Judgment was entered in conformity with the verdict. From this judgment, defendant has appealed.

Appellant contends that plaintiffs failed to make a case for the jury, and for that reason the court erred in refusing to sustain his motion for a directed verdict as to each count of the petition. In determining the issue thus presented, we are required to view the evidence in the light most favorable to plaintiffs, and give them the benefit of all reasonable inferences therefrom. With that rule in mind, we find the facts, as shown by plaintiffs' evidence, to be as follows:

Marie was born December 1, 1946. Her parents were James B. Boedges, Sr. and Loraine J. Boedges. Marie met defendant June 5, 1963. Defendant was then 19 years old. Marie was then a sophomore at Bishop DuBourg High School. Defendant was at the time a student at Parks Aeronautical College in East St. Louis. Two or three weeks after these two met, they started dating each other on Friday and Saturday nights. In January, 1964, they started going out together two or three nights during the week. This practice continued until sometime in October, 1964.

In June or July, 1964, these two young people became engaged to be married. It was their decision to be married after defendant graduated from college and got a substantial job that would enable him to support Marie. Thereafter they dated frequently, about 4 or 5 times a week. They would go to dances, drive-in movies, and sometimes just for a drive. Usually on Sunday, defendant would come to Marie's home and watch television. They did "heavy necking" on these dates.

Marie testified that in September, 1964, she had sexual intercourse with the de-

fendant. She stated it was around the middle of the month; the eleventh, twelfth or thirteenth. This event took place at defendant's home which was also the home of defendant's sister and his parents. Neither his sister nor parents were at home at the time. Another couple were present in a downstairs bedroom. The act of intercourse took place in the sister's second floor bedroom. Defendant went to the bedroom to look for something he wanted, and Marie went with him. They were in this room one-half to three quarters of an hour during which time they engaged in "necking", talking and wrestling with each other. At that time defendant told her he loved her, but there was no promise of marriage that night. She stated that it was her understanding at the time that someday they would be married when he graduated from college. Defendant was a sophomore at that time. Parks College offered a three year course. During this time Marie took off her slacks, blouse and bra, and they continued to "neck". She thereafter took off her underwear and engaged in the sexual act. Marie offered no resistance. When asked if she had a desire for intercourse at the time replied, "I don't remember."

In January, 1965, Marie, by reason of back pains, consulted her doctor. The doctor advised her to return home and soak her back in the tub. Two or three weeks later she again consulted him. The doctor then referred her to Dr. Brennen who performed a rabbit test which disclosed she was four and a half months pregnant. Plaintiff then determined that she became pregnant the middle of September, around the eleventh, twelfth, or thirteenth, of that month. She stated that the exact date and day of the week in September was not important to her then because she loved the defendant.

Shortly after Marie discovered she was pregnant, she asked the defendant to meet her at her house so she could talk to him. Defendant complied with her request and

she and defendant took a ride. She testified: "We took a ride and he stopped somewhere, and we talked about the baby, and I told him he was the father, and he told me that he will sign any papers, and he said that his father could get him out of anything * * * and then I said, 'Let's get married just to give the child a name.' So we started to go over to Illinois to get married, and going over he stopped and turned back and he said, 'If I marry you, my father will kill me.'" She further testified that on this trip they got on to the Jefferson Barracks Bridge; that she did not make any inquiry beforehand as to marriage requirements in Illinois; that they were going to Illinois to talk to a priest who was in defendant's class to see if he could marry them then; that she did not know the name of the priest; that her child was born June 3, 1965, and that she had never had sexual intercourse with anyone other than defendant.

Plaintiff further testified that during 1963 and 1964, she and the defendant had many quarrels; but there were not many long periods of time that they would not speak or see each other. None of these would last more than a week or a week and a half. Defendant quit calling on Marie the latter part of October or in November 1964. This was the result of a quarrel between them. During 1964, starting in April or May, Marie worked at Famous-Barr as a waitress at a counter in the cafeteria. She quit this job when she learned she was pregnant. After the birth of the child, Marie secured employment at the White Castle System. While working, she employs a baby sitter to care for the child. She and the child live in an apartment for which she pays $90.00 per month, and that her total expense amounted to $211.95.

James B. Boedges, Jr., brother of Marie, testified that he introduced defendant to his sister; that his mother told him of Marie's pregnancy; that he then met with defendant and informed him of his sister's

condition; and defendant at first denied he had ever had intercourse with Marie, but after further discussion, admitted it.

There was evidence of hospital and medical expense amounting to $675.00 incurred in connection with the birth of the child, for which recovery was sought under Count II of the petition.

■ Appellant contends that the record is devoid of any promise to marry. There is no merit to this contention. Plaintiff, Marie, testified that she and defendant became engaged in June or July, 1964. This made an issue for the jury's determination even though defendant testified to the contrary.

■ It is also urged that if Marie and defendant did have intercourse in September, 1964, there was no evidence that it was a seduction by defendant, but was an illicit act to which plaintiff yielded to gratify her lustful desires. In support of this contention, it is urged that there was no evidence of any deception, flattery or artifice employed by defendant at the time.

There was testimony by plaintiff, Marie, that she was at the time under a promise to marry the defendant and that he told her he loved her as he had previously done many times. She understood they would be married when he graduated from college. Under such circumstances, a recovery may be had. There is no merit in the point urged. Recovery of damages, as was allowed in this case has been allowed under similar circumstances in a number of cases. See Liese v. Meyer, 143 Mo. 547, 45 S.W. 282; Haus v. Moeller, 107 Mo. 471, 18 S.W. 884; Bird v. Thompson, 96 Mo. 424, 9 S.W. 788; Erwin v. Jones, 192 Mo.App. 326, 180 S.W. 428; Clemons v. Seba, 131 Mo.App. 378, 111 S.W. 522; Rehg v. Giancola, Mo.App., 391 S.W.2d 934.

■ The parents of Marie are entitled to recover for the medical expense sued for in Count II, Comer v. Taylor, 82 Mo. 341.

The verdict of the jury was returned on May 24, 1967. On June 2, 1967, defendant filed his motion for new trial, one of the grounds being: "That the Court erred in responding to inquiry of Jury after retirement to consider case relative to method of payment of possible judgment in that the communication was made not in the presence of counsel and not in open courtroom."

Thereafter plaintiffs' attorney filed an affidavit in opposition to the motion, and on June 30, 1967, defendant filed a counter affidavit. Both affidavits are set forth in the transcript. From these affidavits it appears that after the jury retired the Judge was handed a note which defendant stated was in the handwriting of the foreman, making inquiry as to the method of payment of a judgment; whether by weekly, monthly or yearly payments. The Court then called the attorneys into his chambers and exhibited to them the note, and told them he intended to enter the jury room with the bailiff and answer the questions. Plaintiffs' counsel, in his affidavit, stated that the Judge told the attorneys what his answer would be; that both attorneys consented to the Court's action, and counsel for defendant stated specifically that he was in agreement with the Court and thought the questions should be answered; that at no time, either before or after the Judge entered the jury room, was any objection made by either attorney; that thereafter the jury deliberated for approximately one hour before returning a verdict; that no objection was then made by either counsel, nor was there any motion for mistrial made either orally or in writing until after the verdict was returned and judgment entered.

Defendant's attorney, in his affidavit, stated that he told the Court the question should be answered by referring the jury to the instructions which were binding upon them; that the Judge went to the

jury room and, standing in an open doorway approximately 75 to 85 feet from the attorneys in his chambers, and without the hearing of said attorneys, entered into a discussion with the jury for 5 to 8 minutes.

The note which was delivered to the Judge does not appear in the transcript nor does it appear what answer the Judge gave to the inquiry. No objection to the Court's action appears to have been made at the time he announced his purpose of going to the jury room or upon his return to his chambers. The record is devoid of any objection to the receipt and filing of the verdict. The first objection to the Court's action appears in the motion for new trial filed nine days after the judgment was entered, which was thereafter supported by an affidavit filed twenty-eight days after the filing of said motion.

■ The general rule is that no communication whatever should take place between the Court and the jury, after the cause has been submitted to them, unless in open court, and where practicable, in the presence of the attorneys in said cause. Chouteau v. Jupiter Iron-Works, 94 Mo. 388, 7 S.W. 467.

■ Any violation of this rule is improper, but such impropriety does not require a reversal if it is determined that the error could not have been prejudicial. Civil Rule 83.13, V.A.M.R. But we are unable to find from the record before us whether the error was non prejudicial. While the question did not relate to any issue to be determined by the jury, we are not advised as to what was said by the Judge at the time he talked to the jurors. For a Judge to have talked to the jury without the attorneys being present and not in open court was highly improper and such conduct would warrant setting aside the judgment unless waiver be shown.

■ An Appellate Court will not set aside a judgment for the reasons assigned in the absence of a timely objection by the party seeking such relief. Thornton v. Stewart, Mo.App., 240 S.W. 502. In the case at bar, both attorneys were shown the note delivered to the Judge. The Judge informed the attorneys that he would enter the jury room with the bailiff and answer the questions. Defendant's counsel did not at that time object. He merely suggested that the inquiry be answered by referring them to the instructions. Defendant's counsel did not object to the Court's receiving the verdict or entering judgment thereon. Under these circumstances, we believe there was a waiver of the irregularity. On a similar statement of facts, the Court, in the Thornton case, supra, said:

"* * * The motion for a new trial alleges that the court was guilty of misconduct in going to the door of the jury room and there conversing with some of the jurors. The affidavit of defendant was filed in support of this charge. Of course, there is nothing to show what the conversation was. Conduct of this kind on the part of a trial court has been condemned. Chinn v. Davis, 21 Mo.App. 363. However it appears by defendant's affidavit that he was present and witnessed this incident. There is no evidence that he did not inform his counsel at once, so that the latter would have had a chance to object before the verdict of the jury was returned. A party cannot witness misconduct on the part of the court or jury and sit by and wait the result of the verdict, and then, if it proves to be against him, object to the alleged misconduct. By prompt objection, the defendant could have preserved his rights by moving to discharge the jury (New v. Jackson, supra [50 Ind.App. 120] 95 N.E. [328] loc. cit. 332), but this was not done. We think that, under the circumstances, it was too late to raise the point in the motion for a new trial."

In our opinion a waiver by defendant's counsel of the Court's action clearly appears.

The judgment is affirmed.

RUDDY, J., and JAMES KEET, Jr., Special Judge, concur.