**Alice J. PARKER, Plaintiff-Respondent,**

v.

**Ronald A. BRUNER,
Defendant-Appellant.**

No. 13313.

Missouri Court of Appeals,
Southern District,
Division Three.

July 19, 1984.

Cause Retransferred from Supreme Court
Jan. 15, 1985.

Motion for Rehearing and to Transfer to
Supreme Court Denied March 5, 1985.

Application to Transfer Denied
April 2, 1985.

James E. Reeves, Caruthersville, for plaintiff-respondent.

Russell X. Thompson, Memphis, Tenn., Hal E. Hunter, Jr., New Madrid, for defendant-appellant.

PREWITT, Judge.

Based upon a claim of seduction, plaintiff received a verdict for twenty-five thousand dollars actual damages and fifty thousand dollars punitive damages. Judgment was entered accordingly and defendant appeals.

We first mention defendant's contention that the trial court erred in overruling his motion for judgment notwithstanding the

verdict because the action of seduction violates his constitutional rights. This point is set out in full below.[1] This contention was first raised in defendant's after trial motions.

To raise and preserve a federal or state constitutional question for appellate review, it must be raised at the first available opportunity. *State v. Tatum,* 653 S.W.2d 241, 243 (Mo.App.1983); *Kansas City v. Howe,* 416 S.W.2d 683, 686 (Mo. App.1967). It is obvious that this contention could have been raised earlier by a motion directed at the petition and during the trial. As this point was not preserved for review, it is denied.

The next contention of defendant that we discuss is his assertion that the evidence was insufficient to support the cause of action "because there was no evidence that Appellant had made any promise or other inducement of marriage, other false promises, artifices or solicitations; nor that Appellant made any promise, statement, or other inducement regarding marriage, knowing it to be false; nor that Respondent relied upon any such promise or inducement in consenting to sexual intercourse with Appellant; nor that Respondent surrendered her chastity because of any promise made by Appellant."

In reviewing a claim that the evidence is insufficient to support the verdict, we consider the evidence and reasonable inferences therefrom most favorable to plaintiff. *Ogle v. Webb,* 623 S.W.2d 582, 583–584 (Mo.App.1981).

There are two elements of seduction which defendant contends were lacking in proof. These elements are described in *Breece v. Jett,* 556 S.W.2d 696, 707 (Mo. App.1977), as (1) conduct of the defendant

---

1. THE TRIAL COURT ERRED in overruling Appellant's motion for judgment notwithstanding verdict on the basis that the cause of action of seduction is violative of Appellant's rights to equal protection and due process under the 5th and 14th Amendments to the United States Constitution because the action of seduction, as defined by Missouri Law and as applied to Appellant in this case, is unconstitutional and un-

fairly and unreasonably discriminates against Appellant because of his sex, and places a different burden on males than upon females with respect to the tort of seduction, and further, because the tort of seduction, under Missouri law, may only be committed by a male upon a female and, therefore, constitutes gender-based and unlawful discrimination against Appellant because of his sex.

consisting of "solicitations, importunities, misrepresentations, knowingly false promises or artifices, including a false promise to marry for the purpose of seduction", and (2) intercourse occurring "because of the false solicitations, importunities, false promises or false promise to marry". See also *Greco v. Anderson*, 615 S.W.2d 429, 431 (Mo.App.1980); *Piggott v. Miller*, 557 S.W.2d 692, 695 (Mo.App.1977).

Viewed in the light most favorable to plaintiff, we find that the evidence was sufficient to supply these elements.

At the time they met plaintiff was 23 years of age and defendant 34. She was a nursing student and he a practicing dentist. Defendant had previously been married and divorced. Plaintiff testified that she had not previously engaged in sexual intercourse.

They met at an apartment swimming pool in Caruthersville, Missouri on August 18, 1979. He had an apartment there. She lived in Caruthersville and was visiting a friend who lived in the apartment house. They started dating the next day and saw each other every weekend for several months. She was attending college at Murray State University in Murray, Kentucky, and would either come home on weekends or he would go there or they would go somewhere else.

They took several trips together between their meeting and November 21, 1979, when their first sexual intercourse took place at his apartment. Plaintiff testified that on these trips she resisted his sexual advances and either stayed in a separate room or in a separate bed in the same room. She did so because she had religious beliefs that she should not have sexual intercourse until she was married.

Plaintiff said she believed that because of defendant's prior marriage it was difficult for him to have a relationship without sex. She told him she wanted to wait until she was married, and she suggested that he might date others but he said "I don't want anybody else, Alice. I want you, I want a life with you and that's all I want."

Plaintiff testified that he frequently told her he loved her, and wanted to express his feelings through making love to her. Defendant testified that he did not love her and never told her that. She said he often talked about "[w]hen we get married" and what they might do "[i]n our marriage". She said that defendant told her "he did want me to marry him."

After they had dated several weeks he was "very persistent" and they had arguments over her refusal to consent to sexual intercourse. When he told her that he did not want to have sexual relations with any other woman "he looked like he was gonna cry. He, he was real upset. I've never seen him that upset that much, seemed like he cared that much."

She said she finally consented to have sexual relations with him "after all that time and all that fighting. I'm not sure exactly how it happened, I just know it happened, and I, and I know that I, that I loved him and I know that I believed that he loved me and I know that I felt that we were gonna have a life together, otherwise I wouldn't of."

After two pregnancies, the first terminated by a voluntary abortion, their relationship ended when plaintiff refused to follow defendant's insistence that she have a second abortion.

A jury could find that in order to convince her to engage in intercourse with him he falsely said that he loved her and that they would be married when he did not intend to marry her. There was evidence that they went so far as to obtain a marriage license after the first time she became pregnant and he indicated that he would marry her and then declined. However, that does not establish that his promises were not falsely made for the purpose of inducing her to engage in intercourse a considerable time previously.

Defendant's discussion of their future marriage, when he admittedly did not love her, creates a strong inference that he never intended to marry her and combined with his false statements about loving her indicates that he was making the statements to induce her to have intercourse.

She testified that she took these statements to be an indication that they would be married and that he loved her and in reliance upon them, she engaged in intercourse with him.

The jury obviously rejected defendant's testimony that they first had intercourse on September 9, 1979, and that before it he had only told her that he "enjoyed being with her." He testified that she was the aggressor but he did "[n]ot strongly" resist.

Although the plaintiff's evidence, if believed, may indicate naiveness on the part of plaintiff, whether she believed the things said was for the jury. They may have determined that this was a situation where a college student with little worldly experience and no previous serious romantic involvement or sexual experience was misled and seduced by a sexually experienced older professional man. There was evidence that he was making $285,000 annually and was able to buy her gifts and take her on expensive trips. His attention and statements may have been such that would prevent an inexperienced woman such as plaintiff from comprehending his true objective.

Defendant's contention that plaintiff did not make a submissible case for the jury's consideration is denied. Compare the evidence here with that in *Boedges v. Dinges,* 428 S.W.2d 930 (Mo.App.1968).

We next discuss defendant's contention that the trial court erred in allowing plaintiff's attorney to read excerpts from defendant's deposition. Defendant raises several objections to the use of the deposition, none of which have any validity. The full point is set out below.[2]

■ The deposition of a party may be used by an adverse party for any purpose. Rule 57.07(a)(2); *City of Town and Country v. St. Louis County,* 657 S.W.2d 598, 608 (Mo. banc 1983); *Teachenor v. DePriest,* 600 S.W.2d 122, 125 (Mo.App.1980).

■ In respect to admissions against interest the deposition of a party is like any other evidence. A statement made in a deposition relevant to the issues may be admitted against the deponent as admissions against interest in the same or another action to which he is a party, even though he is present in court and able to testify, or has testified. *Teachenor v. DePriest,* supra, 600 S.W.2d at 125. There is no requirement that notice be given to defendant's counsel that plaintiff's attorney would read admissions from it.

■ If the admissions were made, whether the deposition was filed would not make any difference. Filing it could bear on the proof showing that the statements were made, but here that defendant said them was not questioned.

This point is denied.

We next discuss defendant's contention that the trial court erred in overruling his motion in limine. The point contends this allowed plaintiff to present evidence of "continued sexual relations between the parties on a regular basis for over a period of more than two years after the first act of intercourse and the alleged seduction, and also allowed the Respondent to present evidence of her abortion, a subsequent pregnancy, the birth of a child almost two years subsequent to the alleged seduction, pre-natal expenses incurred by Respondent

2. THE TRIAL COURT ERRED in overruling Appellant's objections to counsel for Respondent reading selected excerpts from the Appellant's pre-trial deposition to the jury because said deposition had not been properly filed with the Court pursuant to Missouri Rule of Civil Procedure 57.07(d)(4), and because no notice had been given to the Appellant's counsel that said deposition was to be used as evidence and Appellant's counsel was therefore unable to prepare for the said deposition being read by making the proper pre-trial objection to inadmissible testimony, and because the deposition had been taken pursuant to the Respondent's original petition, count one for paternity, and therefore, the deposition was irrelevant to Respondent's amended petition for seduction and was immaterial, and the reading of the deposition was further improper because the Defendant was present in the courtroom at the time the deposition was read to the jury and said readings were not admissions against interest, nor used for impeachment, but were selective readings of portions of the deposition which included leading questions and hearsay testimony.

and many other facts and circumstances which were not relevant to the alleged seduction". The full point is set out below.[3] After the motion was overruled no objections were made as the evidence was presented.

It could be questioned whether this point is before us as the overruling of a motion in limine cannot by itself be reversible error, and after the denial of a motion in limine a timely objection is required to preserve the point for appellate review. *Peters v. Henshaw*, 640 S.W.2d 197, 201–202 (Mo.App.1982).

However, due to an indication that there may have been a "standing" objection to this evidence, apparently based on the motion in limine, we discuss this point further.

The motion in limine sought to limit the evidence presented by the plaintiff "to the first act of intercourse between the parties". The body of the motion is set out in full below.[4] As the point indicates and as counsel confirms in oral argument, the contention regarding this evidence is not the same as that presented to the trial court by the motion. In oral argument before us defendant's counsel admitted that evidence of the parties' relationship following the initial act of intercourse would have been admissible on the issue of damages until the "intervening" acts of the abortion and defendant telling plaintiff he would not marry her.

It is obvious then that the motion was sought to prevent at least some evidence

that defendant now acknowledges was admissible. Defendant has thus admitted that the motion was improper as presented and should have been denied. The argument now presented is that after the abortion and defendant's refusal to marry plaintiff, no further evidence of their relationship nor of the second pregnancy and birth of the child should have been allowed. Defendant now says that it was the intervening cause of the abortion and the refusal to marry that terminated the evidence. This is a different argument than made before the trial court. A party cannot change his theory of objection on appeal and have it preserved for review. "[N]o allegations of error shall be considered in any civil appeal from a jury tried case except such as have been presented to or expressly decided by the trial court." Rule 84.13(a). See also *Walker v. Woolbright Motors, Inc.*, 591 S.W.2d 289, 291 (Mo.App.1979).

Even if the contentions now made are essentially the same as presented to the trial court, there still could not be error in the ruling complained of. The trial court did not rule that the evidence now complained of in this point was admissible. By overruling the motion it indicated that some evidence of the parties' acts following the initial intercourse may be admissible. The point contends that the trial court erred in overruling the motion in limine. Defendant now admits that the motion was not correct as some of the evidence it

3. THE TRIAL COURT ERRED in overruling Appellant's motion In Limine to limit the Respondent's evidence to the facts and circumstances reasonably related to the first sexual intercourse between the parties because the tort of seduction is not a continuing tort, and the Court's ruling allowed the Respondent to present evidence of continued sexual relations between the parties on a regular basis for over a period of more than two years after the first act of intercourse and the alleged seduction, and also allowed the Respondent to present evidence of her abortion, a subsequent pregnancy, the birth of a child almost two years subsequent to the alleged seduction, pre-natal expenses incurred by Respondent and many other facts and circumstances which were not relevant to the alleged seduction and which were not proximately caused by the alleged act of seduction, and which were so remote in time and unconnected

from the original alleged act of seduction as to be wholly improper, inflammatory and highly prejudicial none of which were relevant to the issue before the Court.

4. Comes now the defendant and moves the Court to limit the evidence presented by the Plaintiff herein to the first act of intercourse between the parties, which according to Plaintiff's Petition occurred November 21, 1979. That this is a suit for seduction and that the material evidence would only have to do with the first act of intercourse, which according to Plaintiff's Petition occurred November 21, 1979, which would be the seduction, and any additional or other acts of intercourse between the parties would be totally immaterial and made only to prejudice or inflame the jury.

488

sought to prevent was admissible, so there could be no error in overruling it. This point is denied.

■ We next discuss defendant's contention that the trial court erred in allowing plaintiff's child to remain in the courtroom and in not granting relief in other particulars regarding the child. Defendant's full point is set out below.[5]

We conclude that the court's rulings in regard to the child were not an abuse of discretion. In *Rehg v. Giancola*, 391 S.W.2d 934, 937 (Mo.App.1965), the court said:

"In this state in criminal actions where a defendant's liberty, or even his life, is at stake, it has been held that the exhibition of an infant is within the sound discretion of the court. [citing cases] If such is permitted in criminal cases it can hardly be said that the discretion of the

trial court would not be extended to the showing of a child in a civil case."

Evidence regarding the child came in without objection. Seeing the child thereafter would not be so prejudicial as to constitute an abuse of discretion. This contention is denied.

Defendant asserts in his remaining point that an instructional error was committed. This allegation was not mentioned in defendant's motion for new trial so it is not before us. Rule 70.03; Rule 84.13; *Romines v. Donald Maggi, Inc.*, 636 S.W.2d 130, 132 (Mo.App.1982).

The judgment is affirmed.[6]

CROW, P.J., and HOGAN and MAUS, JJ., concur.

GREENE, C.J., dissents and files Dissenting Opinion.

5. THE TRIAL COURT ERRED by allowing the Respondent's infant child to remain in the courtroom during the trial and by denying Appellant's motion to exclude the child and Appellant's motion for a mistrial after the Respondent brought the infant child to the counsel table with her, in front of the jury, and while the Judge was out of the courtroom during which time Respondent displayed and played with the infant child for some time in front of the jury; and the trial Court further erred in permitting Respondent's attorney to go out of the courtroom and bring the Respondent's infant child in the presence of the jury and confront the Appellant with the infant child with the question, "Isn't this your child?"; because the question of paternity and the fact that there was a child born more than two years after the alleged act of seduction occurred was irrelevant to Respondent's seduction claim, and the display of the child in the manner described had the effect of inflaming and prejudicing the jury against Appellant and engendering sympathy toward the respondent and the child. Further, the trial Court erred in not granting a mistrial for the reason that the question of paternity was admitted by Appellant and the action for paternity by Respondent was dismissed prior to the trial and was, therefore, not at issue.

6. This footnote was added by the author of the opinion after its initial circulation and the voting on it.

The dissent requests that this matter be transferred to the supreme court for two reasons, reexamination of the existing law and because this opinion is in conflict with *Breece v. Jett,*

supra, 556 S.W.2d 696, and *Greco v. Anderson,* supra, 615 S.W.2d 429, as those decisions require proof of seduction by clear, cogent and convincing evidence.

Transfer for the purpose of reexamining the existing law requires an order by a majority of the participating judges. Mo. Const. Art. V, § 10; Rule 83.02. A majority has not ordered transfer here.

*Greco* does not mention the standard of proof necessary in a seduction action. *Breece* states that seduction is a species of fraud and the evidence to support it must be clear, cogent and convincing. 556 S.W.2d at 707. That is not the general rule as to fraud. *Crawford v. Smith,* 470 S.W.2d 529, 531–532 (Mo. banc 1971). See also *In the Matter of the Estate of Mitchell,* 610 S.W.2d 681, 687–688 (Mo.App.1980). The practicality of such a standard in a seduction case can be questioned.

If such actions are to be maintained, and it is not for this court to make that determination, that standard could create an insurmountable burden. The intercourse and such acts as show that the female consented because of misrepresentation are not likely to occur before others and knowledge of them is most often limited to the participants.

The statement in *Breece* is dictum and may not be in conflict with this opinion. However, as transfer because the majority opinion is contrary to a previous decision of an appellate court of this state is the prerogative of a dissenting judge, see Mo. Const. Art. V, § 10, Rule 83.01, whether transfer is proper on that ground is not for the other participating judges to decide. On that basis this case is being transferred as requested in the dissent.

GREENE, Chief Judge, dissenting.

To me, there are at least three reasons why the judgment in this case should be reversed. The first is the very nature of the cause of action itself. Seduction is a common law remedy, whose roots are in ancient times. It was formerly an exclusive action by a father to collect for the loss of services of his daughter who had usually became impregnated by some local swain. In time, the courts came to realize that the loss of services claim was fictional, and permitted the woman to sue in her own name, seeking damages for loss of reputation, embarrassment, etc. See Prosser, Law of Torts, 4th Ed., pp. 885–886 (1971).

In the entire legal history of the state of Missouri, there have only been 20 appellate decisions in seduction cases, starting with *Carder v. Forehand,* 1 Mo. 704 (1826), in which case $40 in damages was awarded, to *Greco v. Anderson,* 615 S.W.2d 429 (Mo. App.1980), which acknowledged that the action of seduction is a common law tort bottomed in fraud. Most of these decisions occurred in the 19th century. The time has come to judicially repudiate this ancient doctrine which was artificially created by the courts of Missouri over 150 years ago. The doctrine is sexist, socially unwise, and subject to great abuse, as it provides a fertile field for blackmail, extortion and perjury, since it calls for no proof, according to the majority opinion, other than the allegations of the allegedly deflowered female, plus a pregnancy to justify her claim for damages.

The one-time held notion that women are "the weaker sex" is a myth, as modern women are not easily misled by panting males with sexual propositions. This is especially so when the woman in question is a mature adult. Here, the woman in question was 26 years old and a registered nurse at the time of her second impregnation by Bruner. At trial, she talked learnedly of condoms, IUD's, foam, withdrawal, and other contraceptive methods. Their sexual encounters, by her own words, lasted from at least November of 1979 until April of 1982, punctuated by Bruner giving

her at least $4,000 in the form of 17 checks, stays in hotels and motels throughout the country, and two pregnancies, one ending by voluntary abortion in January of 1981, and the second resulting in the birth of a child in 1982. To say that a seduction action could be maintained under such facts amounts to a perversion of justice. See *Breece v. Jett,* 556 S.W.2d 696, 707–708 (Mo.App.1977) for a similar view.

While this court cannot abolish the cause of action by judicial fiat, the Supreme Court of Missouri, which created the doctrine, can. *Abernathy v. Sisters of St. Mary's,* 446 S.W.2d 599–605–6 (Mo. banc 1969); *Anderson v. Cahill,* 528 S.W.2d 742, 749 (Mo. banc 1975). The doctrine should be abolished, and this case is a proper vehicle to do so.

The second reason why I disagree with the majority opinion is that in Missouri a seduction action is a species of fraud and the evidence to support a judgment in such cases must be *clear, cogent,* and *convincing.* Such evidence must show that the defendant *knowingly* made false representations, including a false promise to marry, for the purpose of seduction, which causes a chaste unmarried woman to consent to sexual intercourse. The evidence must show that the woman had a right to rely on the false promises, that she did rely on them, and, that as a result of such reliance, engaged in sexual intercourse with the defendant. *Breece v. Jett,* supra, at 707.

The only evidence that shows a promise made by Bruner to Alice was her testimony regarding an implied promise to marry her before the first act of sexual intercourse and promises thereafter, and before her first pregnancy that he "would make an honest woman" out of Alice if she became pregnant. The mere fact that Bruner did not marry her after she became pregnant is not enough, standing alone, to maintain Alice's burden of proof by clear, cogent, and convincing evidence in an actionable fraud cause. *Brennaman v. Andes & Roberts Brothers Const. Co.,* 506 S.W.2d 462, 465 (Mo.App.1973). There would have to be clear, cogent and convincing evidence

that at the time he promised to marry her, Bruner had no intention of doing so.

While fraud, grounded on a concealed intention not to perform a certain promise, may be inferred from facts and circumstances [*Wallach v. Joseph*, 420 S.W.2d 289, 294 (Mo.1967), cert. denied, 389 U.S. 953, 88 S.Ct. 335, 19 L.Ed.2d 362 (1967)], in this case there are no such facts and circumstances to justify such a premise. Here, there was not only a complete failure of proof that Bruner did not intend to honor his implied promises to marry Alice when he made them, there was evidence, such as buying her an engagement ring and applying for a marriage license, that showed he actually took steps to perform that promise, but later changed his mind.

Under such facts, Alice did not make a submissible case. *Dillard v. Earnhart*, 457 S.W.2d 666, 671 (Mo.1970); *Bauer v. Adams*, 550 S.W.2d 850, 853–854 (Mo.App. 1977); *Grosser v. Kandel-Iken Builders, Inc.*, 647 S.W.2d 911, 915 (Mo.App.1983). I do not find any actionable fraud and, therefore, no seduction from the facts in this case. I believe the trial court committed prejudicial error in denying Bruner's motion for judgment in his favor. Assuming the validity of the seduction doctrine, I would reverse the judgment outright for failure of plaintiff to make a submissible case.

The final reason why the trial court's judgment should not stand is that, assuming that the tort of seduction should continue to be a viable doctrine in Missouri, and that plaintiff made a submissible case, the evidence submitted as proof of damages, over the standing objection of defendant following the overruling of his motion in limine, was far in excess of that permitted by law.

The tort of seduction allows recovery for loss of chastity. Continuation of sexual relations by the parties after the first such encounter does not cause a continuing tort, or series of torts. While it has been judicially recognized that a woman whose chastity has been compromised can reform, and thereafter be seduced again, such reforma-

tion presupposes a termination of the original relationship, and a new inducement in order to allow her to be compromised again. Absent such a reformation, which is not even claimed by plaintiff here, the seduction is complete on the date when the woman's chastity was originally compromised, which occurred here in November of 1979, if one believes Alice was seduced. *Greco v. Anderson*, 615 S.W.2d 429, 431 (Mo.App.1980).

Even if Alice was to be permitted to show as damages, as some ancient cases suggest, her first pregnancy and ensuing abortion, there is nothing that I know of that should permit her, after she *knew* Bruner would not marry her if she became pregnant, to introduce evidence, over objection, of her second pregnancy and subsequent birth of her child, as there is not a scintilla of evidence that she was induced by new false promises to resume her sexual relationship with Bruner. The majority opinion dodges this issue by attempting to split hairs over the fact that since the motion in limine sought to exclude *all* evidence of sexual contact after the first time, the failure to state in the motion that *some* of the evidence might be admissible and some not was fatal to defendant's claim. I find no basis in law for such reasoning.

After being given a free lane and a fast track by the trial court on this issue, plaintiff's counsel proceeded to make the most of it. In addition to Alice's testimony concerning the birth of the child and its rejection by Bruner, there was evidence that her lawyer brandished the baby in Bruner's face in the jury's presence, demanding that he acknowledge his son. Alice also fondled and played with the baby in the jury's presence, over objection. In my opinion, what occurred here was a circus, not a trial. I believe the trial court erred in overruling the motion in limine, at least to the extent of allowing evidence of sexual relations after the abortion, the ensuing second pregnancy, and the birth of the child. This error would justify reversal and remand, if I am wrong in my first two reasons given for reversal.

For the reasons stated, I respectfully dissent. I request that this case be transferred to the Supreme Court after opinion for re-examination of existing law, and further, because the majority opinion is in conflict with existing Missouri appellate decisions (*Breece v. Jett* and *Greco v. Anderson,* supra) in that those decisions require proof of seduction by clear, cogent, and convincing evidence, and it is obvious that the majority opinion does not require such proof. Rules 83.01 and 83.02, V.A.M.R.