STATE of Missouri, Plaintiff/Appellant,

v.

Eugene HARRIS,
Defendant/Respondent.

Eugene HARRIS, Movant/Appellant,

v.

STATE of Missouri, Respondent.

Nos. 59955, 61583.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 22, 1992.

R. Cristine Stallings, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert Alan Kelly, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury-tried case, defendant was convicted of first degree robbery and armed criminal action under §§ 569.020 * and 571.015. His direct appeal raises a *Batson* issue, and further alleges the trial court erred when the judge entered the jury room and conversed with the jurors outside counsels' presence.

Defendant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. On the direct appeal, we affirm. On the Rule 29.15 issues, we reverse and remand for an evidentiary hearing.

Defendant does not challenge the sufficiency of the evidence. Suffice it to say, defendant was identified as one of two men who robbed the front desk clerk of a motel, taking approximately $250 to $300.

### I. Peremptory Strike

Defendant, a black man, alleges the trial court erred "in ruling that the State did not use its peremptory challenges in a racially discriminatory manner...." Specifically, defendant challenges the State's use of a peremptory strike to exclude venireman Wells, also a black man.

Mr. Wells has been employed by the St. Louis City Circuit Court as a juvenile counselor for 27 years. When youths are detained, his duties involve talking with them and sometimes their parents. He tells "them what they should do, this type of thing."

The State's explanation for striking Mr. Wells was that he works as a counselor "with children who have problems. And it's the State's position he would not be a favorable juror to the State in that he comes in contact with people who have problems with the juvenile level. He might be sympathetic to that and not sympathetic and objective to hearing the evidence as it comes forward in this court."

* All statutory references are to RSMo 1986.

Defense counsel replied that the State had not stricken a similarly situated white juror. Counsel brought to the trial court's attention a research assistant at the University of Missouri at St. Louis. In response, the State's attorney pointed out that Mr. Wells works "with people who are charged with crimes" and not just students as did the other venireperson. In denying the challenge, the trial court said it was willing to accept the State's explanation as an adequate racially neutral reason.

On appeal, defendant primarily relies on *State v. Smith*, 791 S.W.2d 744 (Mo.App. E.D.1990) and *State v. Hudson*, 822 S.W.2d 477 (Mo.App.E.D.1991). Defendant refers to *dicta* in *Smith* which says that the State could not "justify a peremptory strike by invoking the 'rote "neutral explanation"' that a venireperson was a governmental employee." *Smith*, 791 S.W.2d at 749.

■ Here, the State did not justify the strike on the basis that Mr. Wells was "a governmental employee." Rather, the justification was because of his work as a juvenile counselor; he "might be sympathetic" to people, like defendant, "who have problems."

By "their very nature, peremptory challenges require subjective evaluations of veniremen by counsel. Counsel must rely upon perceptions of attitudes based upon demeanor, gender, ethnic background, employment, marital status, age, economic status, social position, religion, and many other fundamental background facts. There is, of course, no assurance that perceptions drawn within the limited context of voir dire will be totally accurate. Counsel simply draws perceptions upon which he acts in determining the use of peremptory challenges." *State v. Antwine*, 743 S.W.2d 51, 64 (Mo.banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). We note that counsel may still rely on legitimate hunches and past experience, "so long as racial discrimination is not the motive." *Id.* at 65; *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

■ A finding of discrimination, or lack thereof, is a finding of fact. *Id.* 743 S.W.2d at 66. We defer to the trial court's

assessment of the credibility of the State's attorney and his explanation. *Hudson*, 822 S.W.2d at 481. Point denied.

## II. *Ex Parte* Communication Between Judge and Jury

■ For his second point, defendant alleges the trial court erred in entering the jury room during deliberations and privately conversing with the jurors outside the presence of counsel. He contends that "by engaging in *ex parte* communication, the judge biased the jury to the prejudice of the appellant."

The jury commenced its deliberations at 3:02 p.m. At approximately 4:30 p.m., the trial judge told the attorneys that he was going to ask the jury members what they wanted to do about dinner. Both attorneys expressed reservations about the trial judge doing this. However, the judge thought he needed to talk with them if he was to have dinner available for them at 6 p.m. Neither attorney went with the judge to the jury room.

After speaking with the jury, the trial judge made a record of what was said. He said he told the jurors to consider "what they wanted to do with respect to their deliberations and suggested to them that if they wanted dinner we could give them menus, they could order. And from the time they ordered until the time they got dinner it would take approximately an hour."

The judge stated that the following exchange was then had with some of the jurors.

Juror: Do we have to have dinner?

Judge: No you don't have to have [dinner].

Juror/s: Do we have to complete our deliberations today?

Judge: No. At some point if you all want to go home we can recess the jury until tomorrow morning and you can come back and resume your deliberations.

The judge said one juror wanted to ask a question. However, the judge indicated to the juror that he refused to entertain ques-

tions about the case. He said the jury members then indicated they would decide about dinner in the next 5–15 minutes. The jury returned its verdicts at 5:17 p.m.

THE STATE TRIAL JUDGE'S BOOK (2d ed. 1971) suggests that after the jury retires to deliberate, "its only source of contact with anyone outside the jury room is with or through the bailiffs." *Id.* at 169. Moreover, the "general rule is that no communication whatever should take place between the Court and the jury, after the cause has been submitted to them, unless in open court, and where practicable, in the presence of the attorneys in said cause." *Boedges v. Dinges,* 428 S.W.2d 930, 934 (Mo.App.E.D.1968); *Maxam v. Dillon,* 674 S.W.2d 258, 259 (Mo.App.E.D.1984); 75B AM.JUR.2d §§ 1573, 1574 (1992). The trial court's action here was improper and constituted error.

■ However, such an impropriety does not amount to reversible error unless prejudice is shown. *Boedges,* 428 S.W.2d at 934; *Maxam,* 674 S.W.2d at 260. Prejudice exists where the communication is calculated to, or has the effect of, coercing the jury's verdict. Defendant alleges that the *ex parte* contact caused the jury members to feel they were under a deadline. Defendant points to the fact that soon after the judge's *ex parte* communication, the jury returned its verdict.

Based on the record before us, we find no reversible error. The judge was attempting to accommodate the needs of the jury so that they could continue to deliberate. Nothing the judge said could be construed as coercing the jury to come to a decision.

Moreover, the judge's statement did not concern the subject matter of the trial. Nothing in the record before us indicates the trial judge in any way expressed his views concerning the facts or defendant's guilt or innocence. Point denied.

### III. Post–Conviction Relief

■ For his third point, defendant contends the motion court erred in failing to disqualify itself *sua sponte* from hearing his 29.15 motion. Defendant asserts that

disqualification was required because the motion court "had personal knowledge of a disputed evidentiary fact concerning the trial, and since there was *ex parte* communication with the jury, and the motion court judge was likely to be a material witness in the 29.15 proceeding."

In his Rule 29.15 motion, defendant alleged his constitutional right to due process was violated when the judge overruled his objection to the trial judge entering the jury room during deliberations. Defendant also filed a motion to disqualify the motion judge, who was also the trial judge, from presiding over his 29.15 motion. The judge denied the disqualification motion, relying on *Thomas v. State,* 808 S.W.2d 364 (Mo. banc 1991).

The judge denied the 29.15 motion without an evidentiary hearing. In denying the motion, the judge wrote, "This Court finds that the comment to the jury was in no way coercive or prejudicial to Movant."

We hold the judge erred in failing to disqualify himself. One of the grounds stated in defendant's 29.15 motion was the propriety of the trial judge's conduct. Rule 2, Canon 3(C) sets forth the applicable standard:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(a) he has ... personal knowledge of disputed evidentiary facts concerning the proceeding;

\* \* \* \* \* \*

Here, the record of the judge's conversation with the jury was made after the trial judge conversed with the jurors in the jury room. Without in any way impugning the integrity of the judge, the record of what was said is based solely on his recollection of what he said and what the jurors said. Presumptively, the only witnesses to what was said are the jurors and the judge.

Fundamental fairness requires that defendant be given the opportunity to present evidence of what the trial judge said or did in the jury room. Our position is supported by *Jackson v. State,* 585 S.W.2d 495 (Mo.

banc 1979). There, our supreme court reversed and remanded for an evidentiary hearing on a Rule 27.26 motion. In that motion, the defendant alleged the trial court coerced his guilty plea. However, there was no transcript of the plea proceeding. The *Jackson* court observed, "when the total lack of a record is coupled with allegations challenging the propriety of past actions of a presently sitting judge, we believe that basic fairness dictates that the latter disqualify in the cause and request assignment of another judge...." *Id.* at 497.

Here, the trial judge should not sit as the motion judge at defendant's evidentiary hearing. " '[A] judge presiding at a trial is not a competent witness, for the duties of a judge and a witness are incompatible. If he testifies he would have to pass upon the competency of his own testimony.... The danger to the dignity of the bench, of subjecting its impartiality to doubt and of placing the defendant at an unfair disadvantage by admitting the presiding judge as a witness is very obvious.' " *Davis v. State*, 598 S.W.2d 582, 585 (Mo.App.W.D.1980), (quoting *Lepper v. U.S.*, 233 F. 227, 230 (4th Cir.1916)).

■ Similar logic precludes the judge from ruling on defendant's motion for an evidentiary hearing. Although the judge's denial of defendant's motion for an evidentiary hearing did not require the judge to be a witness at a hearing, these standards nevertheless are applicable. The judge acted as a witness when he based his ruling on the transcript; the transcript was derived solely from his own recollection.

We reverse and remand for an evidentiary hearing on defendant's 29.15 motion. The judge is directed to disqualify himself from hearing defendant's motion. In light of this disposition, we need not reach defendant's remaining points.

The judgment challenged on direct appeal is affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.