

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110837 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Cause No. 19JE-CR03309-01 |
| | ) | |
| JOHN R. VITALE, | ) | Honorable Victor J. Melenbrink |
| | ) | |
| Appellant. | ) | Filed: March 12, 2024 |

## Introduction

John Vitale ("Defendant") appeals from the judgment upon his conviction following a jury trial for three counts of statutory rape in the first degree and three counts of statutory sodomy in the first degree. On appeal, Defendant argues the trial court erred in responding to a note the jury sent during its deliberations requesting Defendant's prior convictions. Defendant further argues the trial court committed plain error in failing to ensure that the jury instructions required a unanimous verdict on each count of conviction. We affirm the judgment of the trial court.

## Factual and Procedural History

*Facts*

Defendant and Victim were next-door neighbors.[1] One day during summer break, when Victim was around eight years old, Victim went outside to play. While Victim was outside, Defendant offered her a popsicle if she came inside Defendant's house. Once inside, Defendant took Victim to his basement, where he took off Victim's clothes and raped her on a leather couch by inserting his penis into her vagina. Defendant warned Victim not to tell anyone or he would rape her twin sister. As Defendant led Victim out of the basement, Defendant told Victim he "couldn't wait to do it again."

Defendant engaged in sex acts with Victim multiple times during the summer months over several years. Victim could not remember the dates of every time this sort of thing happened.

Defendant sodomized Victim several times by putting his penis in her mouth and his fingers inside her vagina. The incidents of sodomy sometimes occurred in the living room of Defendant's house. The sexual abuse stopped only after Defendant was taken away from his house in an ambulance due to a medical emergency in approximately 2013.

Victim did not disclose the sexual abuse because of Defendant's threat to rape Victim's sister. Ultimately, in August 2019, Victim disclosed the abuse to a school counselor.

*Procedural History*

The State charged Defendant by amended information with three counts of statutory rape in the first degree and three counts of statutory sodomy in the first degree. The case proceeded to trial.

<u>Pre-Trial</u>

---

[1] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

In November 2020, approximately 18 months before trial, the State gave notice to Defendant that it intended to offer evidence of Defendant's two prior convictions for sexual abuse in the second degree and statutory sodomy in the first degree. The Defendant filed a motion *in limine* to exclude this evidence. The trial court held a hearing and denied Defendant's motion. The trial court reasoned that both convictions were legally relevant to the pending charges, but limited how the State could present evidence regarding the earlier conviction for sexual abuse in the second degree. The trial court stated the parties could generate a mutually agreeable stipulation or provide proposals to the trial court.

Before the jury was seated, the State informed the trial court it would introduce the prior convictions by a written submission already provided to the court. The State would also present the live testimony of the victim of the statutory sodomy conviction. Defendant objected that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The trial court overruled the objection, consistent with its previous denial of Defendant's motion *in limine*.

Trial

The State raised Defendant's prior convictions in its opening statement, without objection from Defendant. The State first mentioned Defendant's prior conviction for sexual abuse and informed the jury it would "actually be able to read the specifics around that conviction." The State then mentioned Defendant's prior conviction for statutory sodomy and that the jury would hear about that conviction through the live testimony of the victim of that crime.

During its case-in-chief, the State read into evidence State's Exhibit 1, a brief summary of Defendant's prior conviction for sexual abuse in the second degree, in which Defendant touched the breasts of his step-daughter, A.S., and thrust his pelvis into her from behind to demonstrate

3

anal sex while they were clothed. Defense counsel objected to the admission of the summary. The trial court overruled the objection and granted defense counsel a continuing objection.

Defendant's daughter, A.T., then testified that Defendant sodomized her when she was a child. At the conclusion of her testimony, the State read into evidence State's Exhibit 2, a brief summary of Defendant's prior conviction for statutory sodomy in the first degree of A.T. Defense counsel objected to the admission of the summary, and the trial court overruled the objection.

At the instruction conference, defense counsel objected to all six verdict directors, instructions 6 through 11, on the basis that the State failed to meet its evidentiary burden to submit the case to the jury. The trial court overruled the objections. The trial court then specifically inquired of defense counsel, "[A]re there any objections as to form?" Regarding the verdict directors, the trial court made clear, "When we're going through them, if you have any specific objections as to form, you can raise those one by one." The trial court reviewed all six verdict directors with the State and defense counsel. With each verdict director, the trial court asked defense counsel if he had any objection to the form of the instruction. Regarding each of the six verdict directors, defense counsel responded, "No, Your Honor."

In closing argument, the State reminded the jury it had heard about Defendant's two prior convictions during the trial. The State informed the jury that, during its deliberations, the jury could ask to see Exhibits 1 and 2, the summaries of the convictions, and could read them again. There was no objection to the State's argument.

For his part, defense counsel also reminded the jury of the defense exhibits and that the jury could look at them for itself. Defense counsel also argued: "There is no evidence at all. Was there even six – six incidents talked about in this case? No, there was not. There wasn't really even one incident talked about in this case." Defense counsel continued:

4

The defendant is on trial only for . . . the offenses charged, the six counts in this case. And the prosecution has not presented you with evidence that proves – you don't even know when any of those six counts would have allegedly have [sic] occurred other than what it says in the verdict director you're going to get. You couldn't tell that from [Victim's] testimony. I beg you to pinpoint the time that she was talking about . . .. And you're not going to see that on any of the verdict director forms, Instructions [6] through 11.

In its rebuttal argument, the State again invited the jury, without objection, to read the State's trial exhibits.

<u>The Jury's Request and the Trial Court's Response</u>

Approximately twenty minutes after the jury began deliberating, the jury sent a court form entitled "Jury's Question or Request" to the trial court. On the form, the jury requested, "We would like to see the 2 prior charges." One minute later, on the "Court's Response" portion of the same form, the court responded, "Attached," suggesting it sent Exhibits 1 and 2 to the jury. The transcript does not reveal any proceedings on the record regarding the jury's request or the court's response. The docket sheet for May 4, 2022, the last day of trial, displays entries for the filing of State's Exhibits 1 and 2 and the "Jury's Question or Request" form containing the jury's request and the court's response, filed as "Questions to Judge from Jury."

<u>Verdict</u>

The jury found Defendant guilty as charged on all counts. Defense counsel filed a motion for new trial 23 days later, on May 27, 2022.

**Discussion**

Defendant raises four points on appeal. In his first point, he argues the trial court erred in responding to the jury's request during deliberations because the communication occurred outside the presence, and without the input, of Defendant and defense counsel, and Defendant was thereby denied an opportunity to object to the trial court's response. In his second, third, and fourth points,

Defendant argues the trial court committed plain error in failing to ensure that the verdict directors required the jury to return a unanimous verdict on each count of conviction.

<u>Point I: The Jury Request and the Trial Court's Response</u>

In his first point, Defendant argues the trial court erred in responding to the jury's request because the communication occurred outside the presence, and without the input, of Defendant and defense counsel, denying Defendant an opportunity to object to the Court's response.[2]

*Preservation and Standard of Review*

The State contends, and Defendant concedes, that no claim of error regarding the trial court's communication with the jury was asserted before the trial court. Defendant nevertheless argues the alleged error should be treated as preserved because he and defense counsel were unaware of the conduct giving rise to the alleged error. The State responds that Defendant has not made any affirmative showing that he and defense counsel were unaware of the trial court's response to the jury before this appeal, or that he could not reasonably have discovered it by due diligence.

We have good reason to conclude that Defendant failed to make an affirmative showing that he and his counsel were unaware of the trial court's response before the appeal, and thus Defendant's claim is unpreserved. *See State v. Cooper*, 735 S.W.2d 85, 86 (Mo. App. E.D. 1987) ("When allegations of juror misconduct are first presented in the motion for new trial, there must

---

[2] Defendant's point appears to be multifarious in violation of Rule 84.04. *See State v. McCoy*, 678 S.W.3d 125, 131 (Mo. App. E.D. 2023). Whether the point raises both Defendant's constitutional right to have counsel present and the trial court's decision to send evidence back to the jury is unclear. This lack of clarity obfuscates the proper standard of review, as the former issue is reviewed *de novo*, *see J.A.T. v. Jackson Co. Juv. Off.*, 637 S.W.3d 1, 6 (Mo. banc 2022), while the latter is reviewed for abuse of discretion. *State v. Driskill*, 459 S.W.3d 412, 430 (Mo. banc 2015) (quoting *State v. Roberts*, 948 S.W.2d 577, 596 (Mo. banc 1997)). Though we may refuse to consider a multifarious point, we opt to review *ex gratia* this point and both issues it arguably raises. *See State v. Harris*, 627 S.W.3d 47, 52 n.5 (Mo. App. E.D. 2021).

6

be an affirmative showing that both defendant and his attorney were ignorant of any juror misconduct until after the trial. A party cannot witness jury misconduct or improper influences on the jury and wait until after the verdict before deciding if he will object."); *see also State v. Teter*, 665 S.W.3d 306, 312 (Mo. banc 2023) ("To preserve a constitutional claim of error, the claim must be raised at the first opportunity with citation to specific constitutional sections. Further, to preserve claims of error for appellate review in cases tried by a jury, claims of error must be raised in post-trial motions." (internal citations and quotations omitted)).

Defendant fails to make an affirmative showing, from the transcript of the proceedings or anywhere else in the record, that he and defense counsel were excluded from or otherwise unaware of the trial court's response to the jury's request. Instead, Defendant's issue on appeal is based entirely on the lack of such a record in the transcript. But the record is not silent. The docket sheet reveals an entry for the form containing the jury's request and the court's response, filed as "Questions to Judge from Jury" on May 4, 2022, the last day of trial and 23 days before Defendant filed his motion for new trial. As the State points out, even assuming Defendant and trial counsel were excluded from the Court's response to the jury's request, had trial counsel exercised the same diligence in reviewing the docket sheet as did appellate counsel, who raised this issue for the first time on appeal, the docket entry likewise would have revealed the jury's request and the court's response.

In the more than three weeks between the docket entry and the filing of Defendant's motion for new trial, trial counsel could have filed an objection at the first opportunity and included the allegation of error in the motion for new trial to properly preserve this issue. *See Interest of D.L.S.*, 606 S.W.3d 217, 224 (Mo. App. W.D. 2020) (quoting *In Interest of I.K.H.*, 566 S.W.3d 629, 632 (Mo. App. S.D. 2018) ("[T]here is nothing in the record to indicate that [the appellant] ever advised

7

the trial court of its alleged error. 'Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court.'"). Defendant failed to preserve the issue for appeal. Accordingly, it is subject to only plain error review, which Defendant requests.[3] *See State v. Schneider*, 678 S.W.3d 493, 502 (Mo. App. E.D. 2023).

Plain error review is a discretionary two-step process. *State v. Gonzales*, 671 S.W.3d 846, 850 (Mo. App. E.D. 2023); *State v. Shepard*, 662 S.W.3d 761, 772 (Mo. App. E.D. 2023). Under step one, there must be a "determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Shepard*, 662 S.W.3d at 772. Only if plain error is found under step one may we proceed to the second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice. *Id.* To show manifest injustice or a miscarriage of justice, a defendant must demonstrate "outcome-determinative error." *State v. Martin*, 661 S.W.3d 337, 340 (Mo. App. S.D. 2023). As explained below, Defendant cannot demonstrate plain error.

Even if we were to treat the issue as preserved, as Defendant urges, the result would be the same. We would review *de novo* the claim that the trial court erred in communicating with the jury outside the presence, and without the input, of Defendant and defense counsel. *J.A.T.*, 637 S.W.3d at 6. Defendant's distinctive claim that the trial court erred in denying Defendant an opportunity to object to the trial court's response to the jury's request, would matter only if the court's response

---

[3] While Defendant objected to the admission into evidence of his two prior convictions before and during trial, he does not maintain on appeal that the evidence erroneously was admitted. *See State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022); *State v. Hartwein*, 648 S.W.3d 834, 854–55 (Mo. App. E.D. 2022); *State v. McWilliams*, 564 S.W.3d 618, 625–26 (Mo. App. W.D. 2018).

constituted an abuse of its discretion. *Driskill*, 459 S.W.3d at 430. In either event, we also review for prejudice, and any error would be harmless beyond a reasonable doubt. *See State v. Rice*, 573 S.W.3d 53, 71–72 (Mo. banc 2019).

*Analysis*

The "general rule is that no communication whatever should take place between the Court and the jury, after the cause has been submitted to them, unless in open court, and where practicable, in the presence of the attorneys in said cause." *State v. Harris*, 842 S.W.2d 953, 956 (Mo. App. E.D. 1992). Communications between judge and jury in the absence of and without notice to a defendant and his counsel are improper. *Molasky v. State*, 710 S.W.2d 875, 880 (Mo. App. E.D. 1986). These communications generally "create a presumption of prejudice," but "such presumption may be overcome . . . by a clear indication of a lack of prejudice." *United States v. Smith*, 771 F.3d 1060, 1063 (8th Cir. 2014) (quoting *Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992)). When a defendant fails to preserve an error, there is no presumption of prejudice. *State v. Wyble*, 211 S.W.3d 125, 132 (Mo. App. W.D. 2007). In fact, as already explained, the defendant bears the burden of showing prejudice resulting in manifest injustice. *Id.*; *see also State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993). "Prejudice exists where the communication is calculated to, or has the effect of, coercing the jury's verdict." *Harris*, 842 S.W.2d at 956. This Court must look to the entire record to determine whether Defendant was prejudiced. *State v. Mosely*, 599 S.W.3d 236, 253 (Mo. App. W.D. 2020).

On this record, Defendant clearly was not prejudiced. During the State's opening statement, the State told the jury it would get to read Defendant's prior sexual abuse conviction and would hear live testimony about Defendant's prior statutory sodomy conviction. Defendant did not object to the State's discussion of Defendant's prior convictions during opening statement. Then during

the State's case-in-chief, the State read into evidence State's Exhibit 1, a summary of Defendant's prior conviction for sexual abuse in the second degree. Additionally, the State offered State's Exhibit 2, a summary of Defendant's prior conviction for statutory sodomy in the first degree and the live testimony of the victim of that crime.

Again, in closing argument, the State referred to Defendant's two prior convictions. The State reminded the jury that it already had heard about the prior convictions in evidence. The State informed the jury it could ask for the prior convictions during its deliberations and that the jury could read the prior convictions for itself. Defendant did not object to the State's argument in this regard. Instead, in his closing argument, defense counsel also encouraged the jury to ask for defense exhibits.

Even assuming the record sufficiently establishes the trial court responded to the jury's request for Defendant's convictions by sending State's Exhibits 1 and 2 to the jury without the knowledge of Defendant and defense counsel, Defendant clearly was not prejudiced. The jury already had heard State's Exhibits 1 and 2, testimony from a victim, and argument from the State, including that the jurors were entitled to ask for and read the prior convictions for themselves. For that matter, on appeal, Defendant does not maintain that State's Exhibits 1 and 2 were improperly admitted or otherwise should have been excluded from evidence. Additionally, the trial court's truncated response of "Attached" and apparently sending State's Exhibits 1 and 2 to the jury was neutral, and did not suggest the jury needed to arrive at a verdict or what the verdict should be. *Cf. Rogers v. United States*, 422 U.S. 35, 40–41 (1975) (finding trial court's response induced jury to reach verdict). Whether we review for plain error or harmless error, there clearly is no prejudice to be had from the submission to the jury of properly admitted evidence of Defendant's prior

10

convictions already heard by the jury. *See State v. Tucker*, 564 S.W.3d 376, 379 (Mo. App. S.D. 2018).[4]

In sum, Defendant was not prejudiced. Point I is denied.

Points II, III, & IV: Jury Unanimity

In Points II, III, and IV, Defendant argues the trial court erred in failing to *sua sponte* ensure that the jury instructions required a unanimous verdict on each count of conviction.

*Waiver of Appellate Review*

Before we assess the merits of Defendant's jury unanimity claims, we first consider the State's assertion that Defendant waived appellate review of the alleged instructional error. Defendant concedes that defense counsel neither objected to the form of the jury instructions at trial, nor raised the issue in a motion for new trial. Therefore, the claims are not preserved for review, and Defendant requests only plain error review. *See State v. Brammer*, 614 S.W.3d 18, 23 (Mo. App. E.D. 2020). We thus consider whether Defendant waived plain error review of his claims of instructional error.

In *State v. Wurtzberger*, 40 S.W.3d 893 (Mo. banc 2001), the Supreme Court of Missouri concluded that the defendant's failure to object to a jury instruction waived appellate review, but the waiver did not extend to plain error review. *Id.* at 898. Specifically, the *Wurtzberger* Court held, "Unpreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." *Id.*; *see also State v. Myles*, 479 S.W.3d 649, 656–57 (Mo. App.

---

[4] We stress that our finding no prejudice to Defendant in this case is not to suggest that the apparent lapses in the record here should be replicated or that similar oversights in other circumstances will not amount to reversible error. It bears repeating that "no communication whatever should take place between the Court and the jury, after the cause has been submitted to them, unless in open court, and where practicable, in the presence of the attorneys in said cause," *Harris*, 842 S.W.2d at 956, and communications between judge and jury in the absence of and without notice to a defendant and his counsel are improper, *Molasky*, 710 S.W.2d at 880.

E.D. 2015) (relying on *Wurtzberger* and concluding defense counsel did not waive plain error review by affirmative statement of no objection to jury instructions).

That does not mean, however, that plain error review may not be waived in other circumstances. For instance, in *State v. Clay*, 533 S.W.3d 710, 714–15 (Mo. banc 2017), the Supreme Court returned to this subject and held that the defendant waived plain error review of an instructional error because the defendant invited the error by jointly drafting and proffering the instruction. *Clay*, 533 S.W.3d at 714. The Court also observed that, after changes to the instruction, the defendant affirmatively stated, "Looks good." *Id.* at 715. The Court made clear, "Although plain error review is discretionary, this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Id.* at 714 (quoting *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012)). The Court also specifically addressed the defendant's argument that a defendant "does not waive plain error review by failing to object to a faulty jury instruction or by failing to submit a correct instruction." *Clay*, 533 S.W.3d at 715 (quoting *State v. Celis-Garcia*, 344 S.W.3d 150, 154 n. 3 (Mo. banc 2011)). The Court noted that the defendant "actively collaborated in drafting the instruction he now asserts was erroneous," and refused to allow the defendant to "take advantage of self-invited error or error of his own making." *Clay*, 533 S.W.3d at 715 (quoting *Bolden*, 371 S.W.3d at 806).[5]

---

[5] The Supreme Court also has held that plain error review of alleged evidentiary error is not waived when no objection is made to the admission of evidence due to inadvertence or negligence, but is waived when counsel affirmatively states "no objection" to the admission of the challenged evidence. *See State v. Hughes,* 563 S.W.3d 119, 125 (Mo. banc 2018); *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009). In *Johnson*, the Court held, "Appellant's strategic decision not to object to the admission of the statement constituted a waiver." *Johnson*, 284 S.W.3d at 582. The Court reasoned:

Plain error review is waived when counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence. Plain error review does not apply when a party affirmatively states that

In *State v. Coyle*, 671 S.W.3d 702 (Mo. App. W.D. 2023), the Western District of this Court recently expressed similar "sand-bagging" concerns. *Coyle*, 671 S.W.3d at 712 n.7. There, the court recommended reconsideration of whether "a defendant in a multiple acts sexual offense case can retain the right to plain error review of purportedly faulty verdict directors after affirmatively assuring the trial court that the defendant has no objection to the instructions." *Id.* While the court concluded the defendant did not waive plain error review where his counsel indicated he had no objection to the proposed instructions and his closing argument did not raise those instructions, it ultimately found no plain error. *Id.* at 710–11, 717–20. More importantly for our purposes, the court expressed serious concerns about defendants' "practice of misleading the trial court by stating 'no objection' in response to tendered verdict directors, only to later complain about the instructions on appeal, aware that current jurisprudence ensures that plain error review will not be deemed to have been waived." *Id.* at 712 n.7. Ultimately, the Court suggested, "Reigning in plain error review to disincentivize sand-bagging concerns about verdict directors in multiple acts cases could have the corollary effect of encouraging the State to better describe evidentiary distinctions between multiple acts in the interests of fundamental fairness." *Id.*

*Analysis*

The case before us is more like *Clay* than *Wurtzberger*, and the sand-bagging concerns raised by the Supreme Court in *Clay* and our sister court in *Coyle* feature prominently here. At the

---

it has no objection to evidence an opposing party is attempting to introduce or for a trial strategy reason. Appellant affirmatively stated "no objection" to the admission of the interview, thereby waiving plain error review of his constitutional rights. *Id.* (internal citations and quotations omitted).

In *Hughes*, the Supreme Court unambiguously stated that "if a defendant not only fails to object but also states 'no objection' or stipulates to the admission of otherwise objectionable evidence, the defendant affirmatively waives any error in its admission, plain or otherwise." *Hughes*, 563 S.W.3d at 125.

instruction conference, Defendant objected generally to each verdict director based upon insufficient evidence, and the trial court overruled the objections. The trial court then directly asked, "Are there any objections as to form? When we're going through them, if you have any specific objections as to form, you can raise those one by one." One by one, the trial court went through each verdict director with the State and Defendant. Each time the trial court asked, "Any objection as to form by the Defense?" defense counsel unequivocally responded, "No, Your Honor."

Then, immediately after the trial court instructed the jury with the instructions mutually approved at the instruction conference, defense counsel proceeded to argue in closing that the evidence and the verdict directors were insufficiently specific for the jury to convict on any of the six counts. He argued the prosecution had not presented any evidence of when the six counts occurred. Defense counsel referred the jury to "the verdict director you're going to get" for when the crimes occurred, but argued "you're not going to see that on any of the verdict director forms, Instructions [6] through 11." Defense counsel thus argued deficiencies in the form of the very verdict directors to which he consistently and repeatedly had just affirmatively stated no objection to form.

Though Defendant did not jointly draft or proffer the verdict directors, he also did not merely fail to object to them. He invited error by affirmatively and unequivocally representing he had no objection to each and every verdict director when asked repeatedly "Are there any objections to form?" and "Any objection as to form by the Defense?" By his repeated responses, Defendant invited error more so than defendant's observation in *Clay* that the jointly proffered instruction "[l]ooks good." Defendant's affirmative statements of no objection to form were not the product of inadvertence or negligence. Rather, they quite obviously were strategic decisions

14

allowing defense counsel immediately thereafter to argue to the jury, and now to this Court, that all six verdict directors were deficient as to form.

"[T]his Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *Clay*, 533 S.W.3d at 714; *see also Bolden*, 371 S.W.3d at 806 ("It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making."). This is a quintessential example of the "practice of misleading the trial court by stating 'no objection' in response to tendered verdict directors, only later to complain about the instruction on appeal." *Coyle*, 371 S.W.3d at 712 n.7. And, unlike in *Coyle*, Defendant's closing argument here focused on deficiencies in the verdict directors. Such practice neither satisfies the goal of ensuring a defendant's constitutional right to a unanimous verdict nor encourages the State to draft more specific verdict directors.[6] *See id.*

In the final analysis, we need not decide whether Defendant has waived plain error review of his instructional error claims, and we decline the State's invitation to do so. *See State v. Gannan*, 658 S.W.3d 103, 111 (Mo. App. W.D. 2022) (holding court was not required to conclude that defendant waived plain error review of his claims of instructional error by affirmatively stating that he had no objection to instructions under circumstances that could be explained by trial strategy). Plain error review by its nature is discretionary. *Clay*, 533 S.W.3d at 714; *Gonzales*, 671 S.W.3d at 850. As the Supreme Court held in *Wurtzberger*, "[u]npreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." *Wurtzberger*,

---

[6] We reiterate that the State should submit verdict directors in some way differentiating each alleged offense by timeframe, sequential order, location, or some other distinguishing characteristic to protect criminal defendants' rights to jury unanimity. *See State v. Campbell*, 675 S.W.3d 223, 230 (Mo. App. E.D. 2023); *State v. Rycraw*, 507 S.W.3d 47, 61 (Mo. App. E.D. 2016). Also, our Supreme Court has strongly endorsed a special unanimity instruction to resolve jury unanimity concerns. *See State v. Hamby*, 669 S.W.3d 76, 89 (Mo. banc 2023).

15

40 S.W.3d at 898. For the same reasons that Defendant may arguably have waived plain error review, we conclude that no manifest injustice would occur from our declining to engage in plain error review.

Defense counsel invited error or at the very least sand-bagged the trial court by not objecting to the verdict directors, consistently and repeatedly expressing no objection to form when asked, and then arguing that the verdict directors were not specific enough for the jury to convict on any count. Whether or not Defendant waived plain error review, we decline to engage in plain error review because there are no substantial grounds for believing that manifest injustice has resulted. *See Shepard*, 662 S.W.3d at 772 ("Plain error review is a *discretionary* two-step process: The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." (emphasis in original)); *see also State v. Beerbower*, 619 S.W.3d 117, 125–26 (Mo. App. S.D. 2020) (finding no plain error where defense counsel stated "no objection" to verdict director for strategic reasons).

Points II, III, and IV are denied.

## Conclusion

For the forgoing reasons, we affirm the judgment of the trial court.

_____
Cristian M. Stevens, J.

Robert M. Clayton III, P.J., and
Philip M. Hess, J., concur.

16