

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112516 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | Cause No. 19AB-CR01097-01 |
| | ) | |
| BRIAN S. HENSLEY, | ) | Honorable Craig E. Hellmann |
| | ) | |
| Appellant. | ) | FILED: June 24, 2025 |

## Introduction

Brian Hensley (Hensley) appeals his sentence following convictions for involuntary manslaughter and armed criminal action. Hensley argues the circuit court plainly erred because it improperly obtained extrajudicial information from jurors and because he had no opportunity to cross-examine the jurors regarding their out-of-court conversations with the circuit court prior to his sentencing. Hensley acknowledges that he did not preserve this issue, but instead requests we exercise our discretion and review his claim for plain error. Finding neither evident, obvious, and clear error nor manifest injustice or miscarriage of justice, we decline to conduct plain error review and affirm the judgment of the circuit court.

## Background

On the night of April 15, 2019, Hensley's neighbor, K.C., came over to his house. When K.C. attempted to enter, she found R.M. (Victim) lying in the doorway. When K.C. stated Victim

was hurt, Hensley insisted Victim was faking and couldn't be hurt because there were blanks in the gun. Hensley announced Victim would quit faking if they ordered pizza. K.C. went inside where Hensley was sitting with a handgun next to him and they ordered a pizza. After the pizza was delivered, K.C. told Hensley she needed to go back to her house to see if her fiancé wanted food. K.C. went home and called 911. Police responded shortly after and confirmed Victim was deceased with a bullet wound to her left eye.

Hensley was arrested and charged with second-degree murder and armed criminal action. A jury found Hensley guilty of the lesser included involuntary manslaughter and armed criminal action on December 12, 2023, and recommended sentences of 10 years and 100 years for each count respectively. After dismissing the jurors, and instructing counsel to remain in the courtroom, the Judge met with the jurors in their assembly room to personally thank them for their service. Hensley did not object to this meeting.

Sentencing was held on March 7, 2024, during which the court remarked to Hensley that the jury made it quite clear to him that they felt like the voice of the community and wanted to be heard. Hensley did not object to the court's actions or statement. The court then imposed the sentence recommended by the jury. This appeal follows.

## Standard of Review

We only review unpreserved claims of error under Rule 30.20,[1] which grants us discretion to review plain errors affecting substantial rights if we find the alleged errors resulted in manifest injustice or miscarriage of justice. *State v. Brandolese*, 601 S.W.3d 519, 525-26 (Mo. banc 2020). We "will not review a claim for plain error unless the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* at 526

---

[1] All rule references are to the Missouri Supreme Court Rules (2023).

(internal quotation omitted). Plain error review is a two-step analysis. *State v. Hill*, 697 S.W.3d 885, 888 (Mo. App. E.D. 2024). First, we evaluate whether there was evident, obvious and clear error that affected substantial rights. *Id.* If so, we then decide whether that error resulted in a manifest injustice or miscarriage of justice. *Id.*

"Manifest injustice must be established in connection to the particular facts and circumstances of the case." *State v. Jones*, 686 S.W.3d 293, 301 (Mo. App. E.D. 2024) (citing *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006)). There is no presumption of prejudice in a plain error review, and the defendant bears the burden of showing prejudice resulting in manifest injustice. *State v. Vitale*, 688 S.W.3d 740, 746-47 (Mo. App. E.D. 2024). We review the entire record to determine the presence of prejudice. *Id.* at 747.

Discussion

Hensley asserts the circuit court plainly erred by sentencing him based on extrajudicial information obtained while conversing with jurors outside of the presence of counsel. Hensley further argues the court violated his rights to due process, a fair trial, and the right to confront witnesses, which resulted in manifest injustice, as the judge failed to consider all circumstances of the offense and his history and character in determining his sentence. We disagree.

The "general rule is that no communication whatever should take place between the Court and the jury, after the cause has been submitted to them, unless in open court, and where practicable, in the presence of the attorneys in said cause." *State v. Harris*, 842 S.W.2d 953, 956 (Mo. App. E.D. 1992) (internal quotation omitted). Judges shall recuse themselves from the proceeding if their impartiality may reasonably be questioned as in such circumstances as a personal bias against the party, their counsel, or if they have knowledge of disputed facts that would prevent them from being fair and impartial. Rule 2-2.11(A). However, a judge may

3

communicate with jurors after their verdict to express appreciation for their service. *See* Rule 2-2.8.

Hensley fails to establish the circuit court's actions constituted a clear, evident, and obvious error that affected his substantial rights. The jury rendered its decision and handed down its sentencing recommendation. *After* the jurors were discharged, the judge met with them to personally thank them for their service, as is allowed. *See id.*

The court's language at sentencing echoed the sentiment that the State offered during sentencing arguments. In closing, the State asserted, "You can put 100 years there . . . . Don't make this a slap on the wrist, ladies and gentlemen. Something terrible has happened. There is extreme culpability over there. And this is your opportunity to send a message. Send it." In response, the jury recommended 10 years for count I and 100 years for count II.

Victim's family gave statements before the court reached its sentencing decision. In a letter to the court, Victim's brother described Hensley as an evil monster and suggested an increased culture of gun violence caused by leniency in punishments. He described the impact that losing his sister had on him and their family, and he urged the court to implement the jury recommended sentence. Similarly, Victim's sister described how hard it has been for their family since Victim's death and reiterated her brother's request that Hensley receive the jury recommended sentence. The record reflects the court's response to the testimony of Victim's family: "None of what you've said or your brother said is going to be lost on this Court. Or the evidence that I heard that was presented to this jury."

At sentencing, the court pronounced: "one thing that [the jury] made quite clear to me is that they felt like the voice of the community, and they wanted to be heard, and they will be." This statement does not indicate the court gained any extrajudicial information while speaking to the

4

jury in their assembly room. The jury appeared to send a message by recommending a 100-year sentence, and Victim's family member statements endorsed that recommendation. In response, the court followed the jury's recommendation when sentencing Hensley. Hensley fails to establish the court obtained any extrajudicial information constituting an evident, obvious, and clear error that would warrant plain error review by this court.

Though we need not continue our analysis because we do not find that the court committed evident, obvious, and clear error, we note that Hensley fails to show that had the court gained extrajudicial information, it would have then resulted in manifest injustice or miscarriage of justice. It is presumed that judges do not consider improper evidence during sentencing. *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005). Inadmissible evidence relevant to sentencing is neither prejudicial nor fundamentally unfair in court-tried matters. *Id.*

Here, Hensley argues the court obtained extrajudicial information outside his presence and further that the court based its sentencing decision on this information. Hensley adds the court made very clear its decision was based on the post-verdict juror conversation. However, the court merely stated "[the jury] wanted to be heard, and they will be. They were heard by me and they were heard by the family. They were heard by the community."

Beyond the post-verdict conversation, the court had a myriad of information, including the State's closing arguments, the victim impact statements, and the jury's lengthy sentence recommendation that mirrored the court's remarks regarding the jury's wishes. Furthermore, it is presumed that even if the court gained extrajudicial information while speaking with the discharged jury, that information was not prejudicial or fundamentally unfair because the court is presumed not to have considered it. *Worthington*, 166 S.W.3d at 573. The jury's sentencing

recommendation was based on the evidence at trial, and the court agreed with their recommendation.

Because Hensley failed to establish that evident, obvious and clear error occurred that affected his substantial rights, his asserted error does not "facially establish[ ] substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Vitale*, 688 S.W.3d at 746. Therefore, we decline to conduct plain error review.

Conclusion

For the reasons set forth above, the judgment of the circuit court is affirmed.

_____
Virginia W. Lay, J.

Lisa P. Page, P.J., concurs.
Rebeca Navarro-McKelvey, J., concurs.